UNDER SEAL

22-16009

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

KATHRYN MAYORGA,

Plaintiff-Appellant

vs.

CRISTIANO RONALDO,

Defendant-Appellee

---

On Appeal from the United States District Court,

District of Nevada

Case No. 2:19-cv-00168-JAD-DJA

The Honorable Judge Jennifer A. Dorsey, Presiding

---

## APPELLANT'S OPENING BRIEF

---

LESLIE MARK STOVALL, ESQ.
Nevada Bar No. 2566
STOVALL & ASSOCIATES
2301 Palomino Lane
Las Vegas, NV 89107
Telephone: (702) 258-3034
E-service: court@lesstovall.com
*Attorney for Plaintiff-Appellant*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES……………………………………….…………...3

INTRODUCTION……………………………………………………...………...9

JURISDICTIONAL STATEMENT………………………………………...……9

ISSUE(S) PRESENTED AND STANDARD OF REVIEW…………….………....9

STATEMENT OF THE CASE…………………………………………………...12

SUMMARY OF THE ARGUMENT……...…………………………………......25

ARGUMENT……………………………………………………………………...26

CONCLUSION……………………………………………………………......59

CERTIFICATE OF COMPLIANCE……………………………………………..62

CERTIFICATE OF SERVICE……………………………………...…………….61

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Apple v. Samsung Elec. Co.,*

    306 F. R. D. 234 (US Dist. Ct., Ca., 2015)……………………………...44

*Chevron Corp. v. Pennzoil Corp.,*

    974 F.2d 1156 (9th Cir. 1992)……………………………………………27

*Cosby v AM Media, Inc.,*

    197 F. Supp. 3d 735 (PEAN, 2016)…………………………………..54

*Dole v. Milonas,*

    889 F. 2d 885 (9th Cir, 1989)……………………………………36, 39 ,40

*Dukes v. Wal-Mart Stores, Inc.,*

    2013 U.S. Dist. LEXIS 42740………………………………………….29, 33

*Ensmingers v. Burton,*

    805 S.W. 2d 207 (Ct. App. Mo., 1991)……………………………….54

*FEC v. Christian Coalition,*

    178 F.R.D. 61 (E.D.Va, 1998)………………………………..……...44, 46

*Fidelity & Deposit Company* v. *Grand National Bank,*

    69 F. 2d 177 (8th Cir., 1934)……………………………………………54

*Fomby- Denson v. Department of Army,*

    247 F. 3d 1366 (U.S. Ct. of App, 2001)…………………………………55

*Hearn v. Ray,*

    68 F. R. D. 574 (E. D. Wash. 1975)……………………………………..27

*Hendricks & Lewis PLLC v. Clinton,*

    766 F. 3d 991 (9th Cir. 2014)…………………………………………….50

*Hernandez v. Tanninen,*

    604 F. 3d 1095 (9th Cir. 2010)…………………………………………...10

*Home Indemnity Company v. Lane, Powell, Moss & Miller,*

    43 F.3d 1322 (9th Cir. 1995)……………………………………………..27

*In re Allen,*

    106 F. 3d 582 (41h Cir. 1997) …………………………………………..37

*In Re Grand Jury Investigation*,

    974 F. 2d 1068 (9th Cir., 1992)…………………………….12, 36, 39, 40, 56

*Permian Corp. v. U.S.,*

    665 F. 2d 1214 (D. C. Cir. 1981)…………………………………………46

*Person v. 2434 St. Charles Avenue Condo Association,*

    88 So. 3d 679 (4th Cir, 2012)……………………………………………37

*Rademacher v. Becker,*

    374 P. 3d 499 (Ct. App. Colo., 2015)…………………………………..54

*Schully v. Hughes,*

    820 a 20 So. 2d 1219 (La. App. 4 Cir. 6/5/02) ……………………………37

*Shared Medical Res., LLC v. Histologics, LLC,*

    2012 U.S. Dist. LEXIS 164339……………………………………….……44

*Superpumper v. Leonard,*

    137 Nev. Adv. Op. 47 (2021)…………..………………36, 38, 40, 43, 44, 45

*Terradata Corp. v. SAP SE,*

    2019 U.S. Dist. LEXIS 100337…………………………….29, 30, 33, 34, 42

*U.S. v. Bauer,*

    132 F. 3d 504 (9th Cir. 1997)………………………………………………..38

*U.S. v. Christiansen,*

    828 F. 3d 763 (9th Cir. 2013)……………………………...…………38, 39

*U.S. v. De La Jara,*

    973 F.2d 746 (9th Cir., 1992)…………………………………...30, 33, 34, 46

*U.S. v. First State Bank,*

    691 F. 2d 332 (7th Cir. 1982)……………………………….36, 39, 40, 43, 45

*United States v. Garcia,*

    37 F. 3d 1359 (9th Cir. 1994)………………………………………...……..11

*United States v. Graf,*

    610 F. 3d 1148 (9th Cir. 2010)………………………………..……………10

*United States v. Hinkston,*

    585 F. 3d 1247 (9th Cir. 2009)…………………………………..………….10

*U.S. v. Martin,*

    278 F. 3d 988 (9th Cir. 2002)……………………………………….…38

*U.S. v. Munoz,*

    233 F. 3d 1117 (9th Cir. 2000)…………………………...……………36

*U.S. v. Osborne,*

    561 F. 2d 1334 (9th Cir. 1977)……………….…………….…..…..38

*United States v. Ritchie,*

    632 F. 3d 559 (9th Cir.  2011)……………………………………10

*United States v. Ruehle,*

    583 F. 3d 600 (9th Cir. 2009)…………………………………10, 38, 43

*United States v Ruiz,*

    73 F. 3d 949 (9th Cir. 1996)………………….,………………………..11

*U.S. v. Zolin,*

    809 F. 2d 1411 (9th Cir. 1987)…...…………………11, 26, 43, 44, 56, 57, 58

*Victor Stanley, Inc. v. Clay Pipe, Inc.,*

    250 F.R.D. 251 (2008)…………….…..………………………37, 39, 40

*Weil v. Investment/Indicators, Research & Mgmt,*

    647 F. 2d 18 (9th Cir. 1981)…………………………..………………43, 46

*Williamson v. Jernberg,*

    240 N. E. 2d 758 (Ct. App. Ill., 1968)…………...…………………………54

**Statutes and Rules**

18 USC 4…………………………………………...……………55, 57, 58

25 USC 1391………………………………………………...………9

28 USC1391(b)………………...……………………………………9

28 USC 1332(a)…………………….…...……………………………9

FRCP Rule 4……………………………………………….………....9

FRCP Rule 4(a)(1)(A)…………………………………………………9

FRCP Rule 12(b)(3)…………………………………………………..30

FRCP Rule 41 (e )……………………………………………………30

FRCP Rule 26 (b)(3)…………………………………………………28

FRCP Rule 26(b)(5)(A)…………………………………………...11, 25, 36, 38

FRE 901(a)……………………………………………………………37

FRE 901(b)(l)…………………………………………………………37

NRCP Rule 4……………………………………………………...…22

NRCP 26(b)(5)(A)…………………………………………26, 36, 38, 41, 45

NRS 49.385(1)…………………………………….……………43, 44

NRS 49.385…………………………………………….……..45

NRS 199.290………………………………………….…55, 57, 58

NRS 52………………………………………………….………37

NRS 52.015…………………………………………...…………37

NRS 52.025………………………………………………………..…..37

## INTRODUCTION

This case illustrates the problem created when a district court accepts a "blanket claim of privilege" and fails to require the party asserting privilege to present evidence sufficient to prove that claim. In this case, the district court's disregard of the defendant's failure to prove privilege, and excusing the failure to do so, constitutes a manifest abuse of discretion. Appellant seeks this court's order that the Football Leaks documents are not privileged, vacating the judgement of documents of the remand of the case and the district court for further proceedings consistent with the finding no privilege.

## JURISDICTIONAL STATEMENT

The United States District Court for the District Nevada has subject jurisdiction pursuant to 28 USC 1332(a) in that the amount in controversy exceeded the sum of $75,000, exclusive of interest and cost, and the diversity of the parties is based upon the defendant being a Portuguese citizen reportedly living in Italy. The Ninth Circuit Court of Appeals has jurisdiction over this appeal pursuant to 28 USC 1291. On June 10, 2022 the District Court entered the order and judgment of dismissal (1-ER-0002-0046). A timely notice of appeal was filed on July 8, 2022 FRAP Rule 4(a)(1)(A). This is an appeal from a final judgment disposing of all claims of the parties to the district court case.

## ISSUES PRESENTED AND STANDARD OF REVIEW

I.   The settlement and confidentiality agreements placed the Football Leaks

documents, including those claimed to be privileged communications and documents, "at issue" in the event of a disclosure and, therefore, any claimed privilege is waived. **Applicable standard of review**: "The district court's conclusion whether "statements are protected by an individual attorney client privilege is a mixed question of law and fact which this court reviews independently and without deference to the district court." *United States v. Graf,* 610 F. 3d 1148, 1158 (9th Cir. 2010) (quoting *United States v. Ruehle,* 583 F. 3d 600, 606 (9th Cir. 2009). We review de novo the district court's ruling on the scope of attorney-client privilege. *Id*. The district court's factual findings are reviewed for clear error. *Id*. A finding is clearly erroneous if it is illogical, implausible, or without support in the record. *Id*. (citing *United States v. Hinkston,* 585 F. 3d 1247, 1261 (9th Cir. 2009). (en banc). "We apply the same standard of review for work product doctrine as for attorney – client privilege. See, e.g., *Hernandez v. Tanninen,* 604 F. 3d 1095, 1100 (9th Cir. 2010). *United States v. Ritchie,* 632 F. 3d 559 (9th Cir. 2011).

II.      The defendant's failure to protect the Football Leaks document or seek to recover them waived any claimed privilege. **Applicable standard of review**: The same standard of review as I above.

III.     Defendant has consistently denied the authenticity of the Football Leaks documents precluding a finding of privilege by the district court. **Applicable standard of review**: The same standard of review as I above.

IV.     Defendant's failure to comply with Rule 26 (b)(5)(a) or otherwise protect the Football Leaks documents when filing the motion to strike (10-ER-2037-2049) waived any claim of privilege. **Applicable standard of review**: The same standard of review as I above.

V.      Defendant waived any claim of privilege by voluntarily disclosing the Football Leaks documents. **Applicable standard of review**: The same standard of review as I above.

VI.     The doctrine of judicial estoppel and a "fraud upon the court" precluded consideration of defendant's motion for terminal sanctions. **Applicable standard of review:** "We review the decision whether to invoke judicial estoppel for an abuse of discretion." *United States v. Garcia,* 37 F. 3d 1359, 1367 (9th Cir. 1994) *United States v Ruiz,* 73 F. 3d 949, 953 (9th Cir. 1996).

VII.    The plaintiff was not required to present "concrete evidence" that the defendant raped the plaintiff as a prerequisite to the court performing the "step one" analysis of *Zolin* the evidence offered by the plaintiff was sufficient to satisfy "step one" and the court's refusal to examine the Football Leaks documents "in camera" to determine whether the crime fraud exception to privilege applied was plain error. **Applicable standard of review**: "Whether the District Court applied the correct legal standard in determining whether the government had made a showing sufficient to justify "in camera" review to determine whether the documents are

11

privileged as a matter of law. We review this issue de novo." *In Re Grand Jury Investigation,* 974 F. 2d 1068, 1074 (9th Cir., 1992).

## STATEMENT OF THE CASE

On June 13, 2009, the plaintiff was raped in a penthouse suite at the Palms Casino/Hotel by the defendant. That same day the plaintiff reported the rape to the Las Vegas Metropolitan Police Department (LVMPD) and submitted to a sexual assault examination at the University Medical Center. ██████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ In August of 2009 the plaintiff retained a lawyer to recover her damages from the defendant caused by the rape. ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████

A private mediation was conducted in Las Vegas on January 10, 2010. Prior to the mediation, the emotional condition of the plaintiff was reported to the defense team. ████████████████████████████████████████████

████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████







Norton Roitman, MD, a board-certified psychiatrist practicing in Las Vegas, Nevada, examined the plaintiff to determine what, if any, psychological injury plaintiff incurred as a result of the sexual assault and whether those injuries affected her judgment, reason and competency to enter into the settlement and confidentiality agreements with the defendant.





Jane Heenan MS, MFT. and Nancy Savage Huntington MA, MFT, who treated the plaintiff for the trauma sustained in the June 13, 2009, rape, concurred with Dr. Roitman's opinions (3-ER-0200-0258).

In 2015, Football Leaks began publishing online documents obtained from football clubs, sports agents, lawyers, banks and professional football leagues. In 2016 Football Leaks handed the task over to the European Investigative

Collaboration (EIC). See, *"The Man Behind Football Leaks: Exposure of the Beautiful Game's Biggest Secret's"*, Richard Fitzpatrick, Bench Report, October 22, 2018 (10-ER-2008 :20-2009 :2). *The Introduction to Football Leaks Revelations (week in summary)* reported:

> Football Leaks is the largest Leaks in the history of sport – 1.9 terabytes of information in a total of 18.6 million documents. Over 60 journalists in 12 countries are involved in the project, working for over seven months to reveal corruption among top officials, clubs, agents and players. The project also investigates those behind-the-scenes and the dirty deals that turn the beautiful game into an industry that extracts millions in cash.

(10-ER-2010 :8-20) Rui Pinto has admitted to being John @ Football Leaks. In "How Football Leaks is Exposing Corruption in European Soccer" published May 27, 2019 by the New Yorker, Sam Knight wrote:

> In early 2017, Pinto came across a file that was labeled:" Las Vegas." "I was kind of curious about it," he said. "Why Las Vegas? Let's see what's in there." The file contained emails between U.S. and Portuguese lawyers about an alleged incident that had taken place at the Palms Hotel, Las Vegas, on the night of June 12, 2009. "I got shocked," Pinto told me. "It was a rape case." The documents included a settlement agreement signed January 12, 2010 between "Ms. P" and "Mr. D" in which Ms. P was paid $375,000. A confidential side letter identified Ms. P as Kathryn Mayorga, a former model who was then working at an elementary school, and Mr. D as Cristiano Ronaldo.

(10-ER-2011 :17-20). On April 19, 2017 Der Spiegel published an article entitled *"Cristiano Ronaldo's Secret"* which identified and discussed the following documents:

Der Spiegel is in possession of a copy of a letter from Susan K to Ronaldo. It is part of the trove of documents the whistleblower portal Football Leaks supplied to the news magazine. The letter, almost 6 pages long, is an angry indictment.

A further document addresses what is alleged to have happened during the early morning hours on June 13, 2009, in Apartment 57306. It's a "Settlement Memorialization", and out-of-court deal between Susan K and Ronaldo. Its details were worked out months after that night in Las Vegas. At least nine lawyers were involved.



The April 17, 2018 article was the first occasion plaintiff learned of the breach of the settlement and confidentiality agreements prompting her to retain counsel. Der Spiegel continued to publish the contents of documents pertaining to the rape of the plaintiff. On September 29, 2018 Der Spiegel published an article entitled *"The Woman Who Accuses Ronaldo of Rape,"* stating:

In the reporting for that article, Der Spiegel contacted Mayorga, who appears in the story under the pseudonym Susan K. "No comment," was her response. When journalist encountered her in front of her home, she ran away.

When the article first appeared, Ronaldo's agency Gestifute released a statement saying, "the articles nothing but a piece of journalistic fiction." Statement continued: "The newspaper has based their entire narrative on documents which are unsigned and were the parties are not identified."

That portrayal is incorrect. Numerous documents in Der Spiegel's possession prove as much, including some which have been signed by Ronaldo himself. The existence of those documents could help explain why he is not, in the last year and a half, followed up on his threats to take Der Spiegel to court. In its public statement, Gestifute also discredited the alleged victim, saying she "refuses to come forward and confirm the veracity of the accusation."

(10-ER-2018 :6-17). On October 7, 2018 Der Spiegel published an article entitled

"How Ronaldo's Legal Team Dealt with Disaster, reporting:



(10-ER-2018 :2-2021 :8).

On April 30, 2018 plaintiff counsel, by email, wrote John at Football Leaks, "I would appreciate any help you could provide regarding this matter and specifically any communications, emails, text messages, social media postings, documents or other information you have regarding the sexual assault of my client, including but not limited to: (list of 12 items which included attorney – client communications and documents)" (11-ER-2057). On July 25, 2018 plaintiff counsel received an email from John stating, "In the attachment you can find all relevant information my in possession. I hope that helps." (11-ER-2057). The documents attached to the July 25, 2018 email from John at Football Leaks were submitted by plaintiff counsel to the LVMPD under cover of letter dated August 21, 2018 stating:

> These documents are evidence of Cristiano Ronaldo's sexual assault of Katie Mayorga. These documents are also evidence of separate crimes committed by Cristiano Ronaldo and his legal team of a conspiracy to conceal and obstruct the criminal investigation and prosecution of the sexual assault of Katie Mayorga by Cristiano Ronaldo and fraud.

(11-ER-2057-2214 and 3-ER-0318-4-ER-0496). On August 25, 2018 plaintiff's counsel received the second set of documents from John at Football Leaks. which were forwarded to the LVMPD under cover of letter dated September 24, 2008. (11-ER-2213-2295 and 4-ER-0498-0581). On September 27, 2018 plaintiff filed Case A – 20 – 781869 entitled Mayorga v. Ronaldo in the Clark County District Court (6-ER-0875-0907). Due to limitations in Rule 4 for foreign service under Nevada Rules of

Civil Procedure existing at the time Case A – 20 – 781869 was voluntarily dismissed.

On January 28, 2019 Mayorga filed Case 2:19 – CV – 00168 – JAD – CWA, entitled

Mayorga v. Ronaldo in the United States District Court for the District of Nevada (12-ER-2500-2530). These complaints gave notice to Ronaldo and his lawyers that the

plaintiff obtained documents and communication between Ronaldo and his lawyers

contemporaneous to their investigation and negotiations in 2009 and 2010 (See

paragraphs XXVI, XXVIII, XXIX, XXX, XXXIV, XXXIX, XLI, XLII, XLV, XLVI,

LIII and LIV 6-ER-0875-0907 and 12-ER-2500-2530).

Following the filing of the Clark County District Court complaint on (6-ER-0875-0907) September 23, 2018 defendant's European and local lawyers, were

quoted by the press as stating that the Football Leaks documents have been altered,

modified, or fabricated (10-ER-1946 :16-19). On October 23, 2018, plaintiff counsel

wrote defendant's local counsel Peter Christiansen, Esq. that:

> The implication of these statements is that you, your client, or someone
> acting on your client's behalf compared the Football Leaks documents
> to the original documents ... By way of this letter, I request that you
> identify and provide copies of the specific Football Leaks documents
> that you, your client, or anyone acting on his behalf have identified as
> having been altered, modified or fabricated in your public statements.

(See 6-ER-0910-0918). Mr. Christiansen did not respond. On June 14, 2019 the

defendant filed motions to dismiss, exceed page limits and seal judicial records (12-ER-2385-2499). The court in denying the defendant's motion to seal the entire

record stated:

This leaves Ronaldo's final argument that sealing the record will avoid "eviscerating" the terms of the parties' settlement and confidentiality agreement. Due to the disclosure of documents obtained in the "Football Leaks" hack, the cat is already out of the bag about Mayorga's allegations, the fact that the parties mediated and reached a settlement agreement, and the broad terms of the agreement. What's more, that cat has been out for years, and it appears that a motion to seal the record in this case is Ronaldo's first true effort to stem the flow of information. So, I'm not satisfied that Ronaldo's interest in holding Mayorga to her agreement is enough to justify sealing the entire record in this case.

(12-ER-2453 :12–19). This flow on information included communications and documents between Ronaldo and his lawyers regarding the sexual assault of the plaintiff, the existence of which, were disclosed in published articles and the plaintiff's complaints. Notwithstanding these disclosures, the defendant did nothing to recover or protect those communications and documents, which he later claimed to be privileged, except to publicly disclaim their authenticity. (See, Section III below).

The defendant filed a motion to compel arbitration (12-ER-2360-2375) on August 8, 2019 and a motion to dismiss (12-ER-2322-2359) on August 16, 2019. The plaintiff filed the response to the motion to compel arbitration (11-ER-2298-2320) and an erratum (11-ER-2051-2297) on September 23-24, 2019. The errata exhibited plaintiff's correspondence to the LVMPD and the documents obtained from John at Football Leaks (11-ER-2053-2295). On November 6, 2019 the defendant filed a motion to strike and seal 11-ER-2053-2295 (10-ER-2037-2049). The motion to strike was the first occasion that the defendant claimed that the

Football Leaks documents were privileged; while at the same time, disclaiming their authenticity. (See Sections IV and V below).

## SUMMARY OF THE ARGUMENT

The basis of the district court's order for dismissal is plaintiff counsel's acquisition and use of stolen privileged documents and communications (1-ER-0032-0044). The defendant did not offer any evidence to prove that the Football Leaks documents were stolen. The defendant has never identified the communications or documents contained in the Football Leaks documents it claimed to be privileged as required by Rule 26(b)(5)(A). The defendant chose instead to make a blanket claim of privilege while disclaiming the authenticity of the same documents (10-ER-2037-2049, 5-ER-0844-10-ER-1913). The district court's failure to require the defendant to prove privilege, and excusing the defendant's failure to do so, effectively and improperly shifted the burden of proof to the plaintiff to disprove the defendant's claim of privilege. The court then foreclosed the plaintiff's opportunity to do so by prohibiting discovery on the issue of privilege (10-ER-1914-1916).

The defendant waived privilege, assuming it existed, by failing to take reasonable steps to recover or protect the Football Leaks documents, by placing all of the Football Leaks documents "at issue", by failing to comply with the requirements of Rule 26(b)(5)(A), by the voluntary disclosure of the Football Leaks documents in a

second supplemental Rule 26 disclosure and as an exhibit to the motion for terminal sanctions (7-ER-1248-10-ER-1857). When the initial claim of privilege was made the defendant merely sought to strike the Football Leaks documents. One and a half years later, the defendant filed the motion for terminal sanctions on the same basis as 10-ER-2037-2049. The district court erred by not applying the doctrine of judicial estoppel to deny the motion for terminal sanctions. The district court applied to deny plaintiff's motion for "in camera" review of the Football Leaks documents under *Zolin*.

## ARGUMENT

### I
### The settlement agreement placed the Football Leaks documents "at issue".

The parties and the district court have referred to the documents originating, or believed to have originated, from John at Football Leaks as the "Football Leaks" documents. The original set of documents identified as Football Leaks documents consisted of plaintiff counsel's correspondence to Sgt. Comisky of the Las Vegas Metropolitan Police Department dated August 21, 2018 and September 24, 2018 with attachments (11-ER-2053-2295). An additional 400 pages of communications and correspondence between Ronaldo and his attorneys was found in the LVMPD investigative file subpoenaed and voluntarily disclosed by the defendant (7-ER-1248-10-ER-1857).

"The standard for determining when an implied waiver of the attorney-client privilege occurs is set out in *Hearn v. Ray, 68 F. R. D. 574, 581 (E. D. Wash. 1975)."*

The *Hearn* court stated:

> All of these established exceptions to the rules of privilege have a common denominator; in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party. The factors common to each exception may be summarized as follows: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party puts the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Thus, where these three conditions exist a court should find that the party asserting privilege has impliedly waived it through his own affirmative conduct.

*Home Indemnity Company v. Lane, Powell, Moss & Miller, 43 F.3d 1322 (9th Cir. 1995).* A party may not wield attorney-client privilege as both a sword and a shield.

*Chevron Corp. v. Pennzoil Corp., 974 F.2d 1156, 1162 (9th Cir. 1992).*





The terms of the settlement agreements deprived the plaintiff of evidence contemporaneous to the sexual assault, the negotiations and communications between her lawyer and the defendant's lawyers, and the settlement agreements. The only source of this information was in the possession of the defendant or his lawyers. FRCP 26 (b)(3) The defendant purposely created the situation in anticipation of a disclosure and litigation. Within the district court case the defense asserted privilege to avoid disclosure of this evidence. By doing so the defendant placed the Football

Leaks documents, "at issue." For these reasons, the district court is finding that the defendant did not waive privilege for having placed the "Football Leaks" documents "at issue" in this litigation is not supported by the record, is contrary to law and constitutes a manifest abuse of discretion.

## II
### Defendant's failure to safeguard or protect confidentiality of the Football Leaks documents waived privilege.

In the response to the motion to strike, the plaintiff asserted that privilege was waived due to the defendant's failure to safeguard or protect the Football Leaks documents. (10-ER-2008-2036). The magistrate judge recommended granting defendant's motion to strike (10-ER-1974-1982) and the district court adopted that recommendation (10-ER-1917-1944) over the plaintiff's objection (10-ER-1945-1973). The defendant and the district court relied upon *Dukes v. Wal-Mart Stores, Inc., 2013 U.S. Dist. LEXIS 42740* and *Terradata Corp. v. SAP SE 2019 U.S. Dist. LEXIS 100337*. In *Dukes* the New York Times published an article discussing a confidential memorandum from a law firm to its client Wal-Mart Stores Inc. Walmart submitted the declarations of the associate general counsels for its litigation division of directly responsible for maintaining the memos confidentiality. In summary, these declarations stated that distribution of the privilege memoranda was to a limited certain attorneys and executives, there were 5 original copies of the memo, each was individually numbered on the cover, the memo was maintained in

a locked storage area within the legal department accessible only to authorized personnel and that Wal-Mart did not authorize disclosure of the memo to the New York Times. On these facts the court found that Wal-Mart took reasonable steps to maintain the memo's confidentiality and that the involuntary disclosure of the memo did not waive the attorney-client privilege. In *Terradata*, the district court in reviewing the magistrate judge's decision reported at *2019 U.S. Dist LEXIS 232053*, concluded:

> I agree with Judge Corley's reasoning and analysis. At least in this context, where the involuntary disclosure occurred to a media outlet. I hold that waiver must be analyzed considering the steps SAP holder took prior to the involuntary disclosure, not on the steps SAP took to seek return from or limit the use of documents by Der Spiegel after that disclosure.
>
> Once a law enforcement investigation or civil litigation commences, however, the privilege holder is required to take reasonable steps to protect its privilege. See, *De La Jara*, 973 F. 2d at 749, n. 2 (recognizing the government's argument that *De La Jara* could have filed, for example, a motion to suppress the letter under *Fed. R. Crim. P. 12 (b)(3),* or a motion for return of property under *Fed. R. Crim. P. 41(e)* to protect his privilege). Any argument that SAP should have known that *Terradata* had access to unpublished privileged information given *Terradata's* allegation in the complaint and therefore that SAP should have moved with more speed to protect its privilege and prevent use of that information in this case is not foreclosed.

The only information provided to the district court by the defense on the "steps taken to protect" the documents prior to publication by Der Speigel was the declaration of Carlos Osoria De Castro. (10-ER-1912-1913 filed under seal). De Castro's declaration simply states that, ████████████████████████

███████████████████████████████████████████████████

████████████████████████████ De Castro does not identify any documents

in 11-ER-2053-2295 that were to be protected or claimed to be privileged, what steps

were taken within his firm or the firm's computer system to protect the

confidentiality of any such document, or that any specific document within 11-ER-

2053-2295 was copied, stolen or released without authorization. De Castro fails to

explain how the August 10, 2010 settlement documents came to be disclosed ███

███████████████████████████████████████████████████

██████████████████████ The only other information in the record of this case

concerning pre-disclosure efforts by the defendant to protect privileged documents

and communications were the declarations of De Castro and Richard Wright, Esq.

exhibited in the defendant' reply in support of the emergency motion for terminal

sanctions filed August 13, 2021. De Castro's second declaration states:

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████

███████████████████████████████████████



De Castro and Wright do not identify the documents in their possession that were to be protected, the means by which they protected those documents from disclosure, or that any such document was copied, stolen or removed from their offices without authorization. De Castro and Wright do not state that the documents disclosed as 11-ER-2053-2295 were in their computer systems or possession. Mr. Wright does identify CR-001222-1226 (7-ER-1248-10-ER-1857) as privileged attorney client/work product documents. However, these specific

documents were part of the 400 pages of documents found in the LVMPD investigative file that the defense obtained by subpoena and in turn voluntarily disclosed in its second supplemental disclosure and as an exhibit to the motion for terminal sanctions (See Section VI below). There is no evidence in this record that plaintiff or plaintiff's counsel ever possessed these documents (1-ER-0032: 1-2).

It's undisputed that the disclosure of the documents subject to defendant's motion to strike was made to John at Football Leaks and that John at Football Leaks or the EIC, in turn provided that information to Der Speigel. The *Terradata* court held that the *De La Jara* analysis did not apply to involuntary disclosures to a media outlet that occur prior to publication or litigation. There is no evidence in the record of this case establishing that Football Leaks was a media outlet. If Football Leaks was not a media outlet, the district court erred in limiting its analysis of defendant's effort to maintain confidentiality prior to the purported involuntary disclosures in this case pursuant to *Dukes* and *De La Jara* would apply to assess whether the defendants made a sufficient effort to protect its privilege (including any efforts to recover the privileged documents) before disclosure of the confidential/privileged information. Regardless of John at Football Leaks status as a media outlet, following the publication and commencement of litigation, the *De La Jara* analysis would apply. There is no evidence that the defendant took any steps to recover or protect the Football Leaks documents from the time of the filing of the complaint with the Clark County District

Court on September 27, 2018 (6-ER-0875-0907) until the motion to strike (10-ER-2037-2049) was filed on November 6, 2019; and, even then, defendant failed to comply with Rule 26 (see Section IV and V below). The defendant's motion to strike came approximately ten (10) months following the filing of the federal complaint (12-ER-2500-2530), fifteen (15) months following the filing of the Clark County District Court complaint (6-ER-0875-0907) and thirty-one (31) months following the publication of the April 17, 2017 Der Speigal article disclosing the rape, defendants documents and communications, the terms of the settlement and the settlement documents. Under either *Terradata* or *De La Jara* the defendant's failure to protect these documents and communications waived the claim of privilege. For these reasons the district court manifest abused its discretion in concluding that the defendant did not waive privilege as a result of the disclosure of the Football Leaks documents, and defendant's failure to protect those confidential or privileged documents. (10-ER-1974-1982 and 10-ER-1917-1944).

### III
### Ronaldo has consistently denied the authenticity of the Football Leaks documents precluding determination of privilege by the court.

On November 6, 2019, Ronaldo filed a motion to strike 11-ER-2053-2295 supporting plaintiff's opposition to the defendant's motion to compel arbitration (10-ER-2037-2049). Ronaldo's motion to strike is the locus of the district court's finding of privilege (10-ER-1974-1982 and 10-ER-1917-1944). In the motion to strike (10-

ER-2037-2049), Ronaldo disclaims the authenticity of the Football Leaks documents stating:

> The plaintiff cannot authenticate these documents and **the defendant does not concede that such documents have not been altered or in some instances, even fabricated (emphasis added).**

(9-ER-2037 :26 -27);

> Even if these so - called questions and answers appear in their accurate form, **which defendant does not concede (emphasis added)**, the entire document was undoubtedly prepared by counsel as part of their investigation of plaintiff's allegations and viable defenses to her claims - all of which is the hallmark of privilege attorney work product in addition to protected attorney client communications.

(9-ER-2040 :22 - 26);

> In sum, Exhibits 4 and 5 to plaintiff's opposition consist almost entirely of what purports to be communications among counsel and/or investigators hired at the direction of the defendant's prior counsel ... **While defense does not believe such documents are without alteration (emphasis added),** he nevertheless has never agreed to waive any protections of attorney-client privilege or work attorney work product.

(9-ER-2042 :3 - 9);

> Plaintiff contends that documents 0175 - 0253 are documentation of a question - and - answer session with the defendant. Plaintiff cannot authenticate these documents and **defendant does not concede that these documents have not been altered, nor that they are accurate representations of his communications with counsel (emphasis added).**

(9-ER-2044 :21 - 24). In the emergency motion for case terminating sanctions filed on May 27, 2021 Ronaldo continued to disclaim the authenticity of the Football Leaks documents, stating:

**Defendant continues to object to the authenticity of the Football Leaks documents at issue here and further, does not concede that such hacked materials have not been altered or modified (emphasis added).**

(6-ER-0852 :27-28).

Both the federal and state law of privilege explicitly require the party claiming privilege to authenticate information sought to be protected. Specifically, "the party must ... describe the nature of the documents, communications, or tangible things not produced or disclosed - and do so in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess that claim." *NRCP 26(b)(5)(A); FRCP 26(b)(5)(A)*. A blanket invocation of the privilege is insufficient to demonstrate that the communications are privileged and waives the claimed privilege. *Superpumper v. Leonard, 137 Nev. Adv. Op., 137 Nev. Adv. Op. 47 (2021); U.S. v. First State Bank, 691 F. 2d 332,335 (7th Cir. 1982)*. Typically, an eight-part test determines whether information is covered by the attorney-client privilege: (1) where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications is related to that purpose, (4) made in confidence, (5) by the client, (6) are at his insistence permanently protected, (7) from disclosure by himself or by the legal advisor, (8) unless the protection has waived. In *Re Grand Jury, 974 F. 2d 1068, 1071 (9th Cir. 1992)*. The party asserting the privilege bears the burden of proving each essential element. *U.S. v. Munoz, 233 F. 3d 1117, 1128 (9th Cir. 2000)*. Also see, *Dole v. Milonas, 889 F. 2d 885, 888 n.3,*

*890 (9ᵗʰ Cir, 1989).* "A determination of privilege rests essentially on a determination of fact." *In re Allen, 106 F. 3d 582, 600 (41h Cir. 1997).* "Often times, however, it is impossible to determine if the privilege applies without extrinsic evidence, which must be provided by affidavit, deposition transcript, or other source. *Victor Stanley, Inc. v. Creative Pipe, 250 F.D.R. 251, 265-266 (2008).* Authentication is a condition precedent to admissibility of evidence considered by the court to determine privilege. The requirement of authentication is satisfied by evidence or other showing sufficient to support a finding that the matter in question is what its proponent claims." *NRS 52.015; FRE 901(a).* "The testimony of a witness is sufficient for authentication ... if the witness has personal knowledge that a matter is what it is claimed to be." *NRS 52.025; FRE 901(b)(l).* In *Person v. 2434 St. Charles Avenue Condo Association, 88 So. 3d 679 (4ᵗʰ Cir, 2012),* the Fourth Circuit Court of Appeals noted,

> The requirement that documents be verified or authenticated is not merely a mechanical one of form only. It is based on the fundamental fact that such documents are not self-proving. *Schully v. Hughes, 00 – 2605, p. 5 (La. App. 4 Cir. 6/5/02),* 820 a 20 So. 2d 1219, 1222. To allow unverified and or unauthenticated documents to be considered would result in "all manner of worthless documents [to] magically somehow become admissible by virtue of merely stapling them to a motion for summary judgment." Id.

Ronaldo has objected to the authenticity of every document described as a "Football Leaks" document. By doing so, Ronaldo has admitted he cannot or would

not offer any evidence to establish that any document, communication, or tangible thing described as a "Football Leaks" document was privileged as required by *NRCP 26(b)(5)(A); FRCP 26(b)(5)(A)*. The failure to satisfy the threshold burden of articulating its claim of privilege results in a waiver of the privilege. See, *Superpumper, Inc. v. Leonard. 137 Nev. Adv. Op. 43 (2021)*. For these reasons, the district court's order finding the Football Leaks documents privileged was clearly erroneous, contrary to law, and constitutes a manifest abuse of discretion.

## IV
**Ronaldo's failure to comply with Rule 26(b)(5)(A) or otherwise protect the Football Leaks documents when filing the motion to strike (10-ER-2037-2049) waived any claim of privilege.**

"[A] party asserting attorney – client privilege has the burden of establishing the relationship and the privileged nature of the communication." *U.S. v. Bauer, 132 F. 3d 504, 507 (9th Cir. 1997)*. A party claiming the privilege must identify the specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted. *U.S. v. Martin, 278 F. 3d 988, 1000 (9th Cir. 2002)*, citing *U.S. v. Osborne, 561 F. 2d 1334, 1339 (9th Cir. 1977)*. If necessary, the asserting party must segregate the privileged information from the nonprivileged information. *U.S. v. Ruehle, 583 F. 3d 600, 609 (9th Cir. 2009)*. The claim of privilege must be made and sustained on a question – by – question or document – by – document basis; a blanket claim of privilege is unacceptable. *U.S. v. Christiansen, 828 F. 3d 763, 803 (9th Cir. 2013)*. The proponent must provide the court with sufficient information to

enable the court to determine the privilege, the proponents must show by affidavit the precise facts existing to support claim of privilege. *Victor Stanley, Inc. v. Clay Pipe, Inc. 250 F.R.D. 251, 266 – 267 (2008)*. The Ninth Circuit has recognized several means of sufficiently establishing a privilege, one of which is the privilege log approach. In *Re Grand Jury Investigation, 974 F. 2d at page 1071*. In *Dole v. Milonas, 889 F. 2d 885, 888 n. 3 (9th Cir. 1989)*, the Ninth Circuit found a privilege log to provide sufficient information to establish the attorney-client privilege which identified: (a) the attorney and client involved, (b) the nature of the document (c) all persons and entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared or dated. Simply stating that the documents are protected by privilege is not allowed. *U.S. v. First State Bank, 691 F. 2d 332, 335 (7th Cir. 1982)*.

On August 8, 2019, Ronaldo filed a motion to compel arbitration and stay proceedings in the district court [12-ER-2360-2375]. On September 23, 2019, Mayorga filed an opposition to the motion to compel arbitration [11-ER-2298-2320] and an errata which exhibited the original "Football Leaks" documents (11-ER-2053-2295) the correspondence and attachments addressed to Sgt. Comisky of the LVMPD dated August 21, 2018 and September 24, 2018, respectively). On November 6, 2019, Ronaldo filed a motion to strike 11-ER-2053-2295 asserting a

blanket claim of privilege with the exception of a few documents admitted not to be privileged (See 10-ER-2038 :22 – 2039:1 and 10-ER-2041 :25 – 28). This court has repeatedly held that a blanket claim of privilege is unacceptable. *US v. Christiansen, 828 F. 3d 763, 803* (9th Cir. 2013).   A blanket invocation of the privilege is insufficient to demonstrate that the communications are privileged and waives the claimed privilege. *Superpumper v. Leonard, 137 Nev. Adv. Op. 47* (2021); *US v. First State Bank, 691 F. 2d 332, 335* (7th Cir. 1982). Ronaldo has never provided a privilege log. *Dole v. Milonas, 889 F. 2d 885, 888, n. 3* (9th Cir. 1989). Ronaldo has never provided an affidavit or declaration that addresses, much less satisfies, the eight (8) part test to determine whether the Football Leaks documents are covered by the attorney-client privilege. *In Re Grand Jury, 974 F. 2d 1068, 1071* (9th Cir. 1991). Ronaldo has never identified the specific communications or documents, or the ground supporting the claim of privilege as to each specific communication or document in this case. *US v. Martin, 279 F. 3d 988, 1000* (9th Cir. 2002) Ronaldo failed to provide any evidence to enable the district court to determine that the Football Leaks documents were in fact privileged. *Victor Stanley, Inc. v. Clay Pipe Inc., 250 F. R. D. 251, 266 – 267* (2008). Nevertheless, on February 4, 2020, the magistrate judge recommended granting Ronaldo's motion to strike [10-ER-1974-1982]. The magistrates report and recommendation states:

> Defendant moves to strike Exhibits 4 – 5 to the plaintiff's response (11-ER-2051-2297), Bates No. 3 – 257, as containing attorney-client

> privilege and work product documents that were obtained as part of a cyber – hack that targeted defendant (10-ER-2037-2049). The court will grant defendant's request that they not considered as exhibits with respect to the motion to compel. Under these circumstances, the court does not find the defendant waived the attorney client privilege by either not protecting the documents from a hack or by putting them at issue in this litigation.

(8-ER-1981 :24-1982 :1). The magistrate judge's recommendation does not make an affirmative finding of privilege or identify the documents or communications within 11-ER-2053-2295 deemed privileged. The magistrate judge simply concludes that Ronaldo did not waive privilege. By doing so the magistrate judge allowed Ronaldo to avoid the burden of proving that any documents or communication within Exhibits 11-ER-2053-2295 were privileged as required by Rule 26(b)(5)(A) and overlooked Ronaldo's disclaimer of authenticity (See, 10-ER-2037-2049 and 6-ER-0844-10-ER-1913). On March 3, 2020, plaintiff filed an objection to the magistrate judges February 4, 2020 report and recommendation [10-ER-1945-1973]. On September 30, 2020, the district court judge entered an order sustaining in part the magistrate judge's objection and adopting and modifying in part the magistrate judges report and recommendation [10-ER-1917-1944]. With regards to the magistrate judge's recommendation to strike Exhibit 11-ER-2053-2295, the district court's order states:

> Mayorga objects, arguing that Ronaldo waived that privilege because, as the documents were obtained by a hacker, Ronaldo's attorney neither adequately safeguarded them nor took reasonable steps to investigate and recover the documents from any source. Mayorga provides only conjecture – not reasoned argument or evidence – to support her position. Her bald citation to the *Teradata Corporation v. SAP* is

> unpersuasive, especially considering Ronaldo's argument distinguishing that case from the facts here. Thus, I overrule Mayorga's objection on this motion and adopt the magistrate judge's recommendation to grant Ronaldo's motion and strike Exhibits 4 and 5 from Mayorga's responsive brief.

(8-ER-1940: 2-12). The district court order does not identify the documents or communications contained in the 11-ER-2053-2295 (the original Football Leaks documents) deemed privileged. In adopting the magistrate judge's recommendation, the district court also allowed Ronaldo to avoid the burden of proving the claim of privilege as required by Rule 26(b)(5)(A) and overlooked Ronaldo's disclaimer of authenticity. Effectively, the magistrate judge and the district court improperly shifted the burden to Mayorga to prove that the "Football Leaks" documents were not privileged. The court then foreclosed plaintiff's ability to do so by prohibiting discovery on the issue of privilege (See, 10-ER-1914-1916). In the order overruling objection, adopting report and recommendation, denying relief or reconsideration, and dismissing case the District Court concluded,

> Indeed, plaintiff or more accurately, plaintiff's counsel was in a position to intuit the privileged nature of the documents when he explicitly asked a shady source for documents containing prior counsel's purloined conversations.

(1-ER-0021 :4 – 7). This conclusion appears to underpin the district court's disregard of the defendant's burden to prove privilege and excusing the defendant's repeated waiver of privilege in this case. Perhaps the district court is capable of intuiting the authenticity of the Football Leaks documents, that the Football Leaks documents are

actually what they purport to be, that the communications and documents contained in the Football Leaks documents were authored by the individual identified therein, and that these communications were not disclosed to third parties thereby waiving privilege. The defendant's failure to comply with the requirements of Rule 26 (b)(5)(A) waived the claim privilege. The district courts order finding the Football Leaks documents privileged is clearly erroneous, contrary to law and constitutes a manifest abuse of discretion.

**V**

**Ronaldo waived the privilege by voluntary disclosure of the Football Leaks documents.**

It has been widely held that voluntary disclosure of the contents of privileged attorney- client communications constitutes waiver of the privilege as to all other such communications on the same subject. *Weil v. Investment Indicators, Research Mgmt., Inc., 647 F. 2d 18, 24 (1981*; *U.S. v. First State Bank, 691 F.2d 332, 335 (7th Cir, 1982);* and *Superpumper, Inc. v. Leonard, 137 Nev. Adv. Op. 43 (2021)*; *NRS 49. 385 (1).* The voluntary delivery of a privileged communication by a holder of the privilege to someone not a party to the privilege waives the privilege. *U.S. v. Zolin, 809 F. 2d 1411, 1415 (9th Cir. 1987); U.S. v. Ruehle, 583 F.3d 600,609-612 (9th Cir. 2009).* "A person upon whom these rules confer a privilege against disclosure of a confidential matter waives the privilege if the person or the person's predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any

significant part of the matter" *NRS 49.385(1); Superpumper, Id*. A party may avoid waiver by not voluntarily disclosing privileged information. *Apple v. Samsung Elec. Co., 306 F. R. D. 234, 241 (US Dist. Ct., Ca., 2015)*; *Shared Medical Res., LLC v. Histologics, LLC, 2012 U.S. Dist. LEXIS 164339*. The provisions of Rule 26(c), including appropriate orders after in camera inspection by the court, remain available to protect of the party claiming privilege. *Shared Medical, Id.*; *Zolin*, at page 568. As noted by the district court in the Eastern District of Virginia, "The attorney client privilege is like quicksilver. Initially difficult to grasp, once in one's possession it can easily slide through one's fingers. Disclosures of communication to a third party is one of the quickest ways for one to lose the attorney client privilege". *FEC v. Christian Coalition, 178 F.R.D. 61, 70 (E.D.Va, 1998).*

Ronaldo obtained the LVMPD investigative file by subpoena accompanied with Mayorga's release of information. Ronaldo in turn disclosed the entire LVMPD investigative file, in defendant's second supplemental Rule 26 disclosure on April 30, 2021 (7-ER-1248-10-ER-1857) to the motion for terminal sanctions filed May 27, 2021 [6-ER-00844-10-ER-1913]. The LVMPD investigative file contained the original Football Leaks documents (11-ER-2053-2295) and an additional 400 pages of documents not previously known to the parties or disclosed in the district court case (7-ER-2053-10-ER-1857). Prior to making these disclosures, Ronaldo did not identify any document or communications within the additional 400 pages of

documents found in the LVMPD investigative file as privileged. Ronaldo did not

withhold any of these documents based upon privilege under Rule 26(b)(5)(A) or

seek relief under Rule 26(c). In making these disclosures Ronaldo voluntarily

waived his claim of privilege. NRS 49.385; *Superpumper, Id*; and, *U.S vs. First State*

*Bank, Id*. The district court, in adopting the magistrate judge's report and

recommendation granting terminal sanctions, excused Ronaldo's voluntary waiver

of privilege, stating:

> Mayorga's final waiver theory is that Ronaldo waived privilege by
> disclosing the Metro file containing the Football Leaks documents and
> attaching those documents under seal to his motion for sanctions. I
> decline to rule that the defendant waived privilege by producing
> documents received in response to a joint request and only with
> plaintiff's authorization, particularly when those documents appeared
> at first glance to contain only repeats of the Football Leaks documents
> that plaintiff counsel supplied Metro in the first place. And assuming
> for the sake of analysis that the defense did act carelessly and disclosing
> that file, plaintiff's counsel's unprincipled conduct occurred long
> before the Metro file was produced. Any missteps the defense may have
> made in navigating this unorthodox predicament of the plaintiff's
> making neither excused nor obscured the original discovery
> misconduct. So, I overrule the plaintiff's waiver objections.

(1-ER-0029 :18-0030 :9). The district court again allowed Ronaldo to avoid

compliance with Rule 26(b)(5)(A) and Rule 26(c) and the consequences of a

voluntary waiver of privilege. The district court cited no legal authority to excuse

defendant's voluntary waiver. "Courts in this area takes almost a strict liability

approach to third party disclosure. If the information ends up in the hands of a third

party, courts don't want to know how it got there. Once in the hands of a third party

the privilege, if ever existed, is lost." *Fed. Election Comm'n v. Christian Coalition, 178 F.R.D. 61, 71 (Va.E.D, 1998)*

The Ninth Circuit has held that attorney-client privilege may be waived by implication, even when the disclosure privileged material is inadvertent or involuntary. *Weil v. Investment/Indicators, Research and Mgmt., 647 F. 2d 18, 24 (9th Cir. 1981)*. Ronaldo has never claimed that the disclosure of the Football Leaks documents in his second supplement to Rule 26 disclosure or as Exhibit P in support of the motion for terminal sanctions (6-ER-0844-10-ER-1913) was inadvertent or involuntary and there is no evidence in the record of this court case to support such a conclusion by the district court. Conversely, the privilege is deemed waived if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privilege matter. *U. S. v. De La Jara*, *973 F. 2d. 746, 749 – 750 (9th Cir. 1992)* (Doing nothing to recover the letter or protect its confidentiality during a six-month interlude between its seizure and introduction into evidence is an implied waiver of privilege). Also see, *Permian Corp. v. U.S., 665 F. 2d 1214, 1220 (D. C. Cir. 1981)*. Ronaldo filed the motion for terminal sanctions (7-ER-1248-10-ER-1857) on May 30, 2021. The district court order adopting the report and recommendation granting terminal sanctions and judgment of dismissal was filed on June 8, 2022. Ronaldo did nothing to recover or protect the Football Leaks documents between the time of filing the motion for terminal sanctions and date of judgment, approximately a one

(1) year period of time. Failure to protect the Football Leaks documents during this period of time constitutes an implied waiver of privilege by Ronaldo, *Ibid*. For these reasons, the district court order that Ronaldo's voluntary disclosure of the Football Leaks document did not waive privilege is not supported by the record, is clearly contrary to law, and erroneous and constitutes a manifest abuse of discretion.

## VI
### Judicial estoppel and fraud upon the court.

In the November 16, 2019 motion to strike (10-ER-2037-2049) the defendant reviewed the documents contained in 11-ER-2053-2295, including plaintiff counsel's email request for information to John at Football Leaks and John's responses (See, 10-ER-2038 :14-2042 :9). The defendant summarized its request for relief as follows:

> Rather, plaintiff's counsel took affirmative steps to wrongfully obtain the privileged documents from the so-called cyber hacker. Contrary to both federal and state law and rules of professional conduct, plaintiff then disclose these privileged documents in a judicial filing. Such misconduct cannot be tolerated, and this court should strike the subject documents, which should never have become part of any judicial record in the first instance.

(10-ER-2045 :15 – 19). In its reply the defense stated, "Although defendant is not seeking disqualification of plaintiff's counsel by way of the instant motion, that remedy is certainly available under Nevada law." (10-ER-1985 :15-18). "Defendant respectfully requests that this court enter an order striking documents attached to plaintiff's opposition to defendant's motion to compel arbitration 11-ER-2051-2297 as well as any reference to such documents. (10-ER-1994 :5-8). The magistrate judge

recommended granting the defendant's motion to the extent that 11-ER-2053-2295 were stricken (10-ER-1974-1982) and the district court adopted that recommendation (10-ER-1917-1944). The court found that the remainder of the plaintiff's claims, including illegality of contract, were arbitrable (10-ER-1917-1944). The discovery scheduling order states, … "topics protected by those privileges will not be permitted to be pursued in written discovery or deposition." (10-ER-1914-1916).

The plaintiff complied with the orders of this court. The plaintiff did not use in discovery, or conduct any discovery on, the documents or communications identified as "Football Leaks" documents. Plaintiff's counsel acknowledged during the May 17, 2021 meet and confer, and by letter dated May 25, 2021, that attorney client privilege applies to communications between defendant and his attorneys and communications between the defendant's attorneys (10-ER-1898-1903). Defendant admitted "Stovall agreed not to use as exhibits any communications identified as Football Leaks in the capacity case." (5-ER-0658 :3 –6). Notwithstanding the court's orders and the plaintiff stated position that Football Leaks documents would not be used in the "capacity case," the defendant continued to press the plaintiff to admit that all documents and communications described as "Football Leaks" documents were within the attorney-client privilege (6-ER-0919-7-ER-1210). Plaintiff declined for the simple reason that it was unclear what documents and communications were

deemed privileged based upon the defendant's failure to comply with the Rule 26 and the courts failure to identify documents deemed privileged (10-ER-1974-1982), and the defendant's apparent waiver of privilege. (5-ER-0643 :14-0644 :10). On May 27, 2021, approximately one and a half years after filing the motion to strike 10-ER-2037-2049, the defendant filed the motion for case terminating sanctions on basis of plaintiff's counsel possession and use of privileged documents and communication (6-ER-0844-10-ER-1913). By doing so, the defense has taken a position clearly inconsistent with its earlier position taken in the motion to strike. In the motion to strike the defense sought to strike 11-ER-2053-2295 while the later motion seeks case terminating sanctions or disqualification of counsel. Both motions are based upon the same operative facts; i.e., plaintiff's counsel obtained privileged document stolen from the defendant and used those documents to gain an advantage in litigation. The earlier defense motion to strike was granted. The motion for case terminating sanctions was filed after defendant obtained written discovery from the plaintiff, conducted depositions of the plaintiff's brother, mother, and father, and the disclosure of experts. The motion to seek terminal sanctions was filed when depositions of the mediator and his assistant, the plaintiff's treating therapists and retained forensic psychiatrist were pending. The filing of the motion for case terminating sanctions followed the defendant's disclosure of a January 10, 2020 Mediator's Settlement Memorialization (3-ER-0255-0258) and the LVMPD

investigative file (7-ER-1248-10-ER-1857). The disclosure of the LVMPD investigative file was a voluntary disclosure of communications deemed privileged constituting a waiver (See, Section III above). The pretext for the motion for case terminating sanction was the discovery of undisclosed "Football Leaks" documents (400 additional pages found in the LVMPD investigative file) and plaintiff's counsel threat to use "Football Leaks" documents in discovery. These allegations were made to obfuscate a deliberate change in position from the exclusion of 11-ER-2053-2295 to case terminating sanctions, the waiver of privilege by the voluntary disclosure of privileged documents and to undermine the resolution of the issue of capacity. In this situation, the district court manifestly abused its discretion when it refused to apply the doctrine of judicial estoppel to deny the defendant's motion for terminal sanctions.

These same facts also support a finding of a "fraud on the court." "Fraud on the court" is "an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Hendricks & Lewis PLLC v. Clinton,* *766 F. 3d 991 (9th Cir. 2014)*. The defendant alleged that plaintiff provided "Football Leaks" documents to the LVMPD which it did not disclose to the defense. The defense offered no evidence to support the allegation that plaintiff provided undisclosed documents to the LVMPD and apparently expected the plaintiff to prove it was not the source of these documents. The defense alleged that plaintiff intended

to use "Football Leaks" documents during depositions without evidence and in disregard of plaintiff's written statement to the contrary (7-ER-1248-10-ER-1857). The defendant disregarded the discovery order which directed the parties to, "promptly notice depositions in accordance with the Federal Rules of Civil Procedure and object and/or file a motion for protective order to the extent that they cannot agree on deposition topics." (10-ER-1915 :24-27). The magistrate judge's recommendation adopted the defendant's pretextual basis for the filing of the motion for terminal sanctions as follows:

> On October 7, 2019, Mayorga disclosed the Football Leaks documents in her initial disclosures. (6-ER-0921-0943). Ronaldo also obtained LVMPD's file containing about 200 documents from Football Leaks that Stovall had provided (6-ER-0937). But the file contains about 200 additional privileged documents that did not otherwise appear in Mayorga's initial disclosures. (4-ER-0928). Kendalee Works– Ronaldo's Nevada-based counsel working with Christiansen – questioned Stovall about the 200 additional documents, but Stovall did not answer (6-ER-0941 and 6-ER-0930). After an unsuccessful meet and confer in which Stovall asserted that the Football Leaks documents which the court had not stricken were fair game to use in depositions, Ronaldo filed his motion for sanctions (6-ER-0929).

The "meet and confer" referred to in the magistrate judge's recommendation occurred on May 17, 2021. Neither the LVMPD file nor the "200 additional privileged documents" purportedly contained in the LVMPD's file were discussed during the May 17, 2021 "meet and confer." The substance of the May 17, 2021 "meet and confer" was reported in plaintiff counsel's letter to defense counsel dated May 25, 2021. (10-ER-1898-1903). Defense counsel's first inquiry regarding the

documents contained in the LVMPD file came approximately a week after the May 17, 2021 "meet and confer" by email dated May 23, 2021 (10-ER-1896-1897). Ms. Work's declaration in support to the defendant's motion for terminal sanctions does not state the LVMPD file or the "200 additional privileged documents" were discussed during the May 17, 2021 "meet and confer." (6-ER-0913-0915). The only reference to the LVMPD file or the purportedly "additional privileged documents" found in the LVMPD file related to the May 17, 2021 "meet and confer" in Ms. Work's declaration states in pertinent part:

> 9. … To the best my knowledge and belief, plaintiff has never disclosed to defendant the documents identified as CR – 001188 – CR – 001510, … and,

> 12. …At no time during the meeting confer did Stovall disclose that he had obtained additional documents Football Leaks, which plaintiff apparently provided to LVMPD, but which Stovall has never provided to defendant.

(6-ER-0913 para. 9 and 6-ER-0908 para. 12). At the risk of sarcasm, it is difficult for the plaintiff counsel to produce documents that he did not know existed or possessed. Plaintiff's counsel has consistently denied withholding any "Football Leaks" documents from the defense (3-ER-0209-0210). During the motion hearing defense counsel continued to make these accusations, stating:

> And admittedly, you know, plaintiff argued that they're just different formats, they just look different. And there are some that are the same content, your Honor, but – – and formatted differently, but there are additional documents that the content is not contained in 7-ER-1248-10-ER-1857 which plaintiff actually produced.

Now, plaintiff never produced the full Metro file. Defendant went and subpoenaed it. Albeit, plaintiff provided an authorization which would have been required by the Court anyway.

…In our reply brief, there is a – – footnote 5 on page 6, and that's just a sampling, your Honor, to be honest. We didn't go through every single document, 400 pages, line by line, but what we are able to do is OCR both 7-ER-1248-10-ER-1857 and the Metro file and search for key terms.

And there are key terms that appear on all these documents in the Metro file that simply are not contained in 7-ER-1248-10-ER-1857. So those documents were never disclosed by the plaintiff. So not only do you have them intentionally obtaining them in the first place, keeping them for 14 months, but you also have additional documents that they provided to Metro, admittedly asking Metro to prosecute based upon attorney-client privilege documents that they then didn't disclose it all to plaintiff – – or to the defendant.

(2-ER-0117 :2-15)

The defendant did not provide a shred of evidence that plaintiff's counsel provided documents to the LVMPD that were not produced to the defense. The defendant's accusation was simply based upon the existence of documents in the LVMPD file that were not in plaintiff's 11-ER-2053-295. The district court eventually conceded there was no evidence the plaintiff's counsel provided these documents to LVMPD (1-ER-0032 :1-2)

## VII
## Crime fraud exception.

A contract made with the purpose and upon the consideration that a criminal prosecution shall be suppressed, stifled, or stayed will not be enforced. *Rademacher*

*v. Becker, 374 P. 3d 499, 502 (Ct. App. Colo., 2015); Ensmingers v. Burton, 805 S.W. 2d 207,217 (Ct. App. Mo., 1991)*; *Williamson v. Jernberg, 240 N. E. 2d 758, 760 (Ct. App. Ill., 1968); Fidelity & Deposit Company* v. *Grand National Bank, 69 F. 2d 177, 180 (8th Cir., 1934).* A contract made in consideration of compounding a criminal offense is void because it is in contravention of public policy. *Fomby-Denson v. Department of Army, 247 F. 3d 1366, 1376 -1377 (U.S. Ct. of App, 2001), Cosby v AM Media, Inc. 197 F. Supp. 3d 735 (PEAN, 2016).* On December 6, 2021, the plaintiff filed a motion for in camera review of Football Leaks documents to determine whether the crime/fraud exception applied (4-ER-0613-0631) and supporting Exhibits 1- 8 (3-ER-200-4-ER-0604). The defendant filed a response on August 18, 2021 (2-ER-0162-0174). The plaintiff filed a reply on September 7, 2021 (2-ER-0155-0161). The magistrate judge's denial of the motion for "in camera review" of the Football Leaks documents was set forth in the order and report and recommendation filed October 6, 2021 (2-ER-0068 :13–0076 :5) which states:

> The court cannot apply either the statutes to Ronaldo or his attorneys for two reasons. First, to decide that Ronaldo and his attorneys violated the statutes by using the settlement agreement to conceal a crime would require the court to first decide that Ronaldo committed a crime that night in 2009. But the events of that night are not in front of this court, and the court will not decide them.
>
> Second, even if the court did conclude that Ronaldo committed a crime that night in 2009, the court could only find that Ronaldo employed his attorneys to violate the statutes by negotiating the settlement agreement. As discussed more fully below, Mayorga had already decided to drop charges before she decided to pursue civil action. The

settlement agreement was drafted so that, should the LVMPD nevertheless prosecute, Mayorga would not violate the agreement by participating. And while the settlement agreement did prevent Mayorga from voluntarily reopening her criminal charges, the nature of the alleged crime means that Ronaldo's attorney did not violate NRS 199.290 or 18 USC 4 by drafting it.

Whether Ronaldo committed a crime that night in 2009 depends entirely on Mayorga's word v. Ronaldo's. The settlement agreement thus explains at Mayorga and Ronaldo's version of the of events different (3-ER-0260 para. 1.1 – 1.2). Absent concrete evidence to the contrary, Ronaldo's attorneys were entitled to advocate his version of the events – that the encounter was consensual – by drafting the settlement agreement to prevent Mayorga from reasserting criminal charges for a crime that, according to Ronaldo is fictional.

Plaintiff filed an objection to the recommendation denying in camera review (2-ER-0048-0062) which was overruled by the district court. (1-ER-0011 :10-13-0012 :1-2). The magistrate judge and the district court offered no authority to support this analysis or legal conclusion. The events of June 13, 2009 were squarely before the court for the simple reason that the Football Leaks documents pertain to that night and the negotiation and settlement of the plaintiff's claims arising from that night. *Zolin* does not require the plaintiff to prove she was raped by Ronaldo as a pre-requisite to seeking an "in camera" review of the "Football Leaks" documents. Whether it is "her word against Ronaldo's" is irrelevant. It was clear error on the part of the magistrate judge and the district court to conclude that the plaintiff must prove any crime by "concrete evidence" or otherwise, prior to performing step one of the analyses set forth in *U.S. v. Zolin, 491 U.S. 554, 569 (1989).* See, In *Re Grand*

*Jury Investigation, 974 p.2d 1068, 1073-1074 (9th Cir. 1992)* (By requiring the government to meet the prima facie showing made by corporation in establishing the attorney client privilege, the district court set the threshold too high).

The threshold question of *Zolin* simply asks, "Is there a factual basis adequate to support a good – faith belief by a reasonable person, … that an "in camera review" of materials may reveal evidence to establish the claim that the crime/fraud exception applies?" The answer to this question is "yes" based upon evidence presented in 3-ER-0200-4-ER-0600 and the exhibits referenced in 2-ER-0055 :10-0061 :8. On June 13, 2009 the plaintiff was raped by the defendant (4-ER-0582-0601). ███████

████████████████████████████████████████████████

████████████████████████████████████████████████

According to the LVMPD, the plaintiff's decision to pursue the case civilly caused it to close their investigation

in July 2009 (7-ER-1248-10-ER-1857). The January 10, 2010 settlement agreement required ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████ The plaintiff did not receive the original or copy of the settlement confidentiality agreement. (3-ER-0274, para 13.11).

The settlement agreements in this case go beyond the legitimate boundaries of the settlement of plaintiff's damages claim. ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████ This evidence establishes a factual basis adequate to support a good-faith belief by a reasonable person that in camera review of material may reveal evidence to establish the claim that the crime fraud exception applies to the Football Leaks documents (*Zolin* at *572)*. The predicate crimes being compounding (*NRS 199.290)* and misprision of felony (*18 USC 4)*. For these reasons the district court's order affirming the magistrate's recommendation was not supported by the record, contrary to law and a manifest abuse of discretion (2-ER-0061).

Interestingly, the magistrate judge found that, "Ronaldo's attorneys ... draft[ed] the settlement agreement to prevent Mayorga from reasserting criminal charges". Federal law prohibits concealment of the actual commission of a felony. *18 USC 4* (misprision of a felony). "Nevada law makes it a felony to enter into an agreement to conceal a crime, or abstain from testifying, delaying a prosecution, or

withholding any evidence of a crime or violation a statute*." NRS 199.290* (compounding crimes). These statutes do not limit their application to initial reporting or exclude application to a later reassertion of a crime. The magistrate judge and district court cited no legal authority to support this interpretation. On its face the finding that "the settlement agreement was to prevent Mayorga from reasserting criminal charges" is itself "adequate to support a good-faith belief by a reasonable person that in camera review of materials may reveal evidence to establish the claim that the crime fraud exception applies." *Zolin, at p. 572*. In the context of the January 10, 2010 settlement agreement which explicitly states, █████ ██████████████████████████████████████████████████████████ the magistrate judge's finding is itself sufficient to find waiver of privilege on the basis of the crime fraud exception.

The magistrate judges finding that the "settlement agreement was to prevent Mayorga from reasserting criminal charges" also misstates the written agreement. The January 10, 2022 settlement agreement written by the mediator states, ███████ █████████████████████████████████████████████ No agreement or writing pertaining to the settlement of the plaintiff's claims against Ronaldo states that the agreement was to "prevent Mayorga from reasserting criminal charges" against Ronaldo (3-ER-0227 :15-0228: 12). For these reasons the denial of the plaintiff's

motion of in camera review of the Football Leaks documents is not supported by the record, contrary to the law and constitutes a manifest abuse of discretion.

## CONCLUSION

This case illustrates the problem created when a district court accepts a "blanket claim of privilege" and fails to require the party asserting privilege to present evidence sufficient to prove that claim. In this case, the district court's complete disregard of the defendant's failure to prove privilege, and excusing the failure to do so, constitutes a manifest abuse of discretion. This court should find that the defendant waived privilege, vacate the judgement of dismissal and the remand of the case to the district court for further proceedings consistent with the finding of a waiver of privilege.

Dated this 19th day of December, 2022.

STOVALL & ASSOCIATES

/s/ Leslie Mark Stovall

_____

LESLIE MARK STOVALL, ESQ.
Nevada Bar No. 2566
2301 Palomino Lane
Las Vegas, NV 89107
Telephone: (702) 258-3034
E-service: court@lesstovall.com
*Attorneys for Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s) 22-16009**

The undersigned attorney or self-represented party states the following:

[**X**] I am unaware of any related cases currently pending in this court.

[ ]  I am unaware of any related cases currently pending in this court other than   the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s) 22-1600**

I am the attorney or self-represented party.

**This brief contains** 13,266 **words,** including 13,266 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

        **/s/ Leslie Mark Stovall**          **December 19, 2022**
**Signature** _____ **Date _____**