22-16009

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

KATHRYN MAYORGA,

Appellant,

vs.

CRISTIANO RONALDO

Appellee.

_____

On Appeal from the United States District Court,

District of Nevada

Case No. 2:19-cv-00168-JAD-DJA

The Honorable Judge Jennifer A. Dorsey, Presiding

_____

**APPELLEE CRISTIANO RONALDO'S ANSWERING BRIEF**

**REDACTED**

_____

PETER S. CHRISTIANSEN, ESQ.
KENDELEE L. WORKS, ESQ.
CHRISTIANSEN TRIAL LAWYERS
710 S. 7th Street, Suite B
Las Vegas, Nevada 89101
(702) 240-7979
*Attorneys for Appellee*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................II

TABLE OF AUTHORITIES ....................................................... IV

I.  INTRODUCTION .................................................................1

II. ISSUES PRESENTED FOR REVIEW ...................................3

III. STATEMENT OF THE CASE ...........................................4

A.  STOVALL UNLAWFULLY OBTAINED STOLEN, PRIVILEGED AND INADMISSIBLE DOCUMENTS. ....................................................4

B.  KM NOTICED BUT VOLUNTARILY DISMISSED HER APPEAL FROM THE COURT'S ORDER STRIKING THE PRIVILEGED AND STOLEN FOOTBALL LEAKS DOCUMENTS. ...................................8

C.  STOVALL RELENTLESSLY PERSISTED IN HIS USE OF PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS AND WORK PRODUCT TO PROSECUTE KM'S CLAIMS. ...............................9

IV. SUMMARY OF ARGUMENT ......................................... 20

V.  ARGUMENT ................................................................. 25

A.  THE DISTRICT COURT DID NOT ERR WHEN IT REPEATEDLY RULED RONALDO NEVER WAIVED THE ATTORNEY-CLIENT OR WORK PRODUCT PRIVILEGES. ..................................................25

1.  *The stricken Football Leaks Documents are Undeniably Protected and Privileged Attorney-Client Communications and Work Product.* ................... 26

i.  Ronaldo Specifically Identified the Privileged Nature of the Football Leaks Documents and KM has Repeatedly Conceded such Documents are Privileged. .....................................................................27

ii.  Ronaldo was Not Required to Prepare a Privilege Log because KM Unilaterally Requested and Obtained ALL of the Subject Documents and Knew Their Contents. .................................................................32

2.  *Ronaldo, at all Times, Protected the Attorney-Client Communication and Work Product Privileges.* ................................................ 34

3.  *Asserting the Privilege Does Not Amount to Waiving the Privilege.*......... 41

B.  THE DISTRICT COURT PROPERLY CONCLUDED RONALDO WAS NOT JUDICIALLY ESTOPPED FROM SEEKING DISMISSAL AND/OR DISQUALIFICATION. ..............................................................43

1.  *Ronaldo Has Consistently Maintained the Football Leaks documents are Stolen and Stovall Should Never have Obtained the Materials in the First Place – Because this Position has Stayed Constant, Judicial Estoppel Cannot Apply.* ..................................................................... 43

**C.   THE DISTRICT COURT CORRECTLY DENIED KM'S UNTIMELY AND MISPLACED MOTION FOR IN CAMERA REVIEW.** ......................... 45

*1.   KM Failed to Demonstrate the Crime-Fraud Exception Should Apply Under the Facts of this Case.* .............................................................. *45*

i.   KM Failed to Offer Any Evidence Sufficient to Warrant *In Camera* Review, Much Less Non-Privileged Evidence. ................................ 46

ii.   The District Court Did Not Clearly Err in Finding KM Failed to Meet Prong One of *Zolin* .......................................................................... 49

*2.   KM's Claim She Complied with the District Court's Orders is Belied by The Record in this Case.* ...................................................................... *51*

**VI. CONCLUSION** ............................................................................... **53**

**STATEMENT OF RELATED CASES** ................................................. **54**

**CERTIFICATE OF COMPLIANCE** .................................................. **54**

# TABLE OF AUTHORITIES

## CASES

*AMA Multimedia LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020)......................2, 20, 39

*Caldwell v. Dist. Court*, 644 P.2d 26 (Colo. 1982)..............................................46, 48

*Dukes v. Wal-Mart Stores*, 01-cv-252 CRB(JSC), 2013 U.S. Dist. LEXIS 42740, 2013 WL 1282892 (N.D. Cal. March 26, 2013)........................................35, 36, 38

*Hendrick & Lewis, PLLC v. Clinton*, 766 F.3d 991 (9th Cir. 2014) ...................23, 43

*In re Am. W. Airlines, Inc.* 217 F.3d 1161 (9th Cir. 2000).......................................2

*In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639 (8th Cir. 2001)........................48

*In re Grand Jury Investigation,* 974 F.2d 1068 (9th Cir. 1992)................................45

*In re Napster Inc. Copyright Litig.,* 479 F.3d 1078 (9th Cir. 2007) .........................47

*In re Phenylpropanolamine (PPA) Prods. Liab. Lit.*, 460 F.3d 1217 (9th Cir. 2006) 20

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) ..........................................47

*Nat'l Hockey League v. Metro Hockey Club, Inc.* 427 U.S. 639 (1976)...................20

*Raich v. Gonzales*, 500 F.3d 850 (9th Cir. 2007)......................................................2

*Superpumper, Inc., v. Leonard*, 495 P.3d 101 (Nev. 2021) ......................................27

*Teradata Corp. v. SAP SE*, 2019 US Dist. LEXIS 100337 (N.D. Cal. June 14, 2019) ..............................................................................................................35, 36, 38

*United States v. Chen*, 99 F.3d 1495 (1996) ............................................................48

*United States v. Christensen*, 801 F.3d 970 (9th Cir. 2015) ....................................48

*United States v. Garcia*, 73 F.3d 1359 (9th Cir. 1994) ............................................43

*United States v. Graf*, 610 F. 3d 1148 (9th Cir. 2010)..............................................26

*United States v. Ruehle*, 583 F.3d 600 (9th Cir. 2009) ............................................26

*United States v. Ruiz*, 73 F.3d 949 (9th Cir. 1996) ..................................................43

*United States v. Zolin*, 491 U.S. 554 (1989) .....................................................passim

## STATUTES

Nev. Rev. Stat. § 48.109 ...........................................................................................18

## RULES

FRCP 26 ...............................................................................................................22, 33

Nev. R. Civ. P. 26 ..........................................................................................22, 28, 33

## I.   INTRODUCTION

This case arises from an encounter alleged to have occurred in 2009. Appellant Kathryn Mayorga ("KM") alleges Appellee Cristiano Ronaldo ("Ronaldo") sexually assaulted her at the Palms Casino in Las Vegas, Nevada, on June 13, 2009. Appellant's Excerpts of Record ("ER") at 12-ER-2501–02. Within months of the alleged assault, KM retained counsel and sought civil redress for her claims. *See* 2-ER-0071:18-26; *see also* Appellee's Supplemental Excerpts of Record ("SER") at 2-SER-0413–417. Ronaldo, through counsel, vehemently denied KM's version of events but agreed to privately mediate the dispute pre-litigation. *Id.* The mediation took place in Las Vegas in January 2010, and the parties reached an agreement as to confidentiality and a monetary settlement amount. *Id.* Over the course of the following eight months, the parties further negotiated the final terms of the written agreement, and ultimately memorialized the resolution in that certain Settlement & Confidentiality Agreement ("SCA"). *Id.* The SCA was fully executed by both parties and their counsel in August 2010. 2-SER-0325–0378. Ronaldo paid the negotiated settlement amount and the matter resolved. Nearly a decade later, KM retained Stovall & Associates ("Stovall"), and in 2019, initiated the underlying lawsuit. 12-ER-2500.

More than nine months into the litigation, Ronaldo's counsel learned for the first time, that KM's counsel, Stovall, had fourteen months earlier, admittedly and intentionally sought stolen attorney-client communications and work product from an

alleged cyber hacker.  1-ER-0006–0009 and 2-ER-0064-0066. KM then not only used those documents as exhibits to public filings in the district court case, but also as support for her and Stovall's request that the Las Vegas Metropolitan Police Department ("LVMPD") reopen a decade old investigation to criminally prosecute Ronaldo. *Id*. Despite court orders striking the privileged documents from the record, KM and Stovall continued to treat the privileged communications as "fair game." 1-ER-0009–0010. When it ultimately became clear the stricken, privileged documents had infected the heart of KM's claims, Ronaldo successfully moved for case terminating sanctions.  1-ER-0010–0012. KM now appeals, continuing to argue, despite her previous concessions the subject documents are "presumptively privileged," Ronaldo has somehow failed to meet his burden to demonstrate the subject Football Leaks documents are privileged at all, and if they were, the privilege has been waived.[1]

---

[1] *AMA Multimedia LLC v. Wanat*, 970 F.3d 1201, 1213-14 (9th Cir. 2020) (reiterating that, absent exceptional circumstances, this Court generally will not consider arguments raised for the first time on appeal, although it has discretion to do so.  Such exceptions exist where the issue was not raised before the trial court and the new issue arises while the appeal is pending because of a change in law; or the issue presented is a pure question of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court.  Even where such exception(s) may be present, this Court will nevertheless assess whether the circumstances of the case overcome the assumption against hearing new arguments) (*In re Am. W. Airlines, Inc*. 217 F.3d 1161, 1165 (9th Cir. 2000); *Raich v. Gonzales*, 500 F.3d 850, 868 (9th Cir. 2007)).

In short, KM once again begs forgiveness for her unsuccessful bid to circumvent our system of jurisprudence and construct an entire case based on stolen, unauthenticated and confidential, privileged, attorney-client communications. This Court should respectfully decline and find as the district court did that, "Allowing a case so infused with hacked, privileged documents to proceed would only encourage unscrupulous attorneys to seek out such documents to use as the basis for their claims," – a result that justice simply cannot allow. *See* 1-ER-0043:9-11.

## II.   ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred when it found that Ronaldo never waived the attorney-client or work product privileges.

2. Whether the district court erred when it found Ronaldo was not judicially estopped from seeking dismissal and/or disqualification where he had previously moved only to have the Football Leaks documents stricken from the record.

3. Whether the district court erred when it denied KM's motion for *in camera* review and found the crime-fraud exception did not apply to eviscerate the attorney-client and work product privileges where there was no evidence Ronaldo engaged counsel to do anything but defend himself against KM's accusations and demand for a civil settlement.

### III. __STATEMENT OF THE CASE__

### A. STOVALL UNLAWFULLY OBTAINED STOLEN, PRIVILEGED AND INADMISSIBLE DOCUMENTS.

Stovall brazenly admits he requested and obtained documents from an accused cyber hacker, which he has repeatedly attempted to use to support KM's allegations in the district court case.[2] 1-ER-0123–0125 and 5-ER-0638. Stovall, acting on behalf of KM, obtained the stolen documents in July 2018, and apparently used them to craft a verified complaint against Ronaldo, which he first filed in state court on September 27, 2018. 5-ER-0674–0705. KM's verification affirms under oath she had read the contents of the State Court Complaint, knew the contents thereof, and the allegations therein were true of her own knowledge or to the best of her information and belief. *Id.* KM subsequently dismissed that action and filed a new Complaint in the underlying district court action on January 28. 2019. 2-SER-0413–0418 and 1-ER-2500–2530.

While both Complaints reference that, "KM obtained from Football Leaks copies of documents and communications between Ronaldo and his 'team,'" KM did not disclose that her lawyer had specifically requested and received documents labeled privileged attorney client communications and work product. 5-ER-0687 and 12-ER-2512–2513. To the contrary, on October 23, 2018, Stovall sent correspondence to

---

[2] KM has represented, through Stovall, that "Documents 0003-0121 and 0121 [sic] and 0175-0275 are documents that [KM's] Counsel received from 'Football Leaks' pertaining to [Ronaldo]." 1-SER-0158–0160. KM first attached these documents as publicly filed exhibits to her Errata to Opposition to Ronaldo's Motion to Compel Arbitration. *See* 11-ER-2051–2157 and 11-ER-2213–2295.

Ronaldo's counsel requesting that Ronaldo "identify and provide copies of the specific 'Football Leaks,' documents that you, your client or anyone acting on his behalf have identified as having been altered, modified or fabricated…". 5-ER-0707; *see also* 5-ER-0709–0716 (affirming 6-ER-0909 was received in October 2018, not 2013 [5-ER-713 at ¶ 19]).

Tellingly, both Complaints consistently refer to communications between Ronaldo and his "team of 'fixers,' known as 'personal reputation protection specialists,'" – careful to never reveal what KM had really obtained readily appear to be privileged communications between a "team" of "lawyers" and their client. 5-ER-0678 and 12-ER-2504. Indeed, KM's verified State Court Complaint named "DOE" and "ROE" defendants, again choosing to not identify any of Ronaldo's "lawyers" as part of the "team," instead specifying the DOE and ROE defendants "were agents, servants, employees, partners or joint ventures of every other Defendant named herein." 5-ER-0674–0675. Ronaldo was the only other named defendant. *Id*. Consistent with federal practice, there are no DOE and ROE defendants named in the subject action. 12-ER-2500–2530.

It was not until nearly a year later, on September 23, 2019, that KM finally disclosed to Ronaldo, the hundreds of documents Stovall obtained—documents that had been cyber hacked from Ronaldo's prior lawyers, the majority of which are labeled

privileged attorney-client communications and work product.[3] 11-ER-2051–2297 (KM's Errata to Opposition to Ronaldo's Motion to Compel Arbitration at Exhibits 4 and 5 (Documents identified as Bates Nos. 003-257 [11-ER2057–2295])); *see also*, 6-ER-0920–7-ER-1210 (KM's Initial Disclosures at Exhibits 8 and 9). The first page of KM's Exhibit 4 to the Opposition to Ronaldo's Motion to Compel is an email from Stovall to "Football Leaks," which is dated July 25, 2018. 11-ER-2057–2058; *see also* 6-ER-0948–0949. Within the email, Stovall informs the recipient he represents "Katie Mayorga" and has been retained to file a lawsuit against Cristiano Ronaldo for injuries suffered as a result of an alleged sexual assault. *Id.* Stovall, as counsel for KM, specifically requested, in relevant part, that "Football Leaks" provide him with:

> any communications, emails, text messages, social media postings, documents or other information… including but not limited to:
>
> 1. the sexual assault.
> 2. the **employment of attorneys and investigators** by Ronaldo to investigate my client, her family, witnesses and friends after the sexual assault
> 3. the **employment of attorneys and investigators to represent and defend** Ronaldo after the sexual assault of my client
> 4. the **reporting and communications of the attorneys and investigators** that investigated Katie Mayorga, her family, witnesses, friends and the attorney Katie hired to represent her.
> 5. the **reporting and communications of the attorneys and investigators representing and defending** Ronaldo following the sexual assault **thru the negotiations and conclusion of the settlement** and non disclosure agreement.

---

[3] Ronaldo continues to object to the authenticity of the Football Leaks documents at issue here and further, does not concede that such hacked materials have not been altered or modified.

    3. [sic] the **negotiations leading up to the agreement to mediate**

    4. [sic] the **mediation itself**

….

    6. The **evaluation or assessment of the attorney** representing Katie Mayorga, before, during and after the mediation.

    7. the terms of the settlement and non-disclosure agreement

…

*Id.*; *see also* 1-ER-0005:3–ER-0006:5 (emphases added)(citing ECF No. 123 at 5 (sealed) [5-ER-0638]). In response to Stovall's email request for attorney-client communications and attorney work product, the individual identified as "Football Leaks" sent an attachment of documents, stating, ██████████████████ ██████████████████████████████████████████ 11-ER-2057 and 6-ER-0948; *see also* 1-ER-0006:6-7.

Upon receipt of KM's Opposition to Ronaldo's Motion to Compel Arbitration, which for the first time, revealed Stovall had intentionally sought and obtained privileged attorney-client communications and work product, Ronaldo's counsel promptly alerted Stovall to the issue. 5-ER-0719. The parties then stipulated to have the court seal Exhibits 4 and 5 pending motion practice and a ruling from the court as to whether the documents should be both sealed and stricken from the record. 1-SER-0158–0160. On February 4, 2020, the magistrate issued his Report and Recommendation, in relevant part finding Ronaldo had not waived the attorney-client or work product privileges, nor put the documents at issue in this litigation. 10-ER-1981–1982. On September 30, 2020, over KM's Objection, the district court affirmed

the magistrate's recommendation on the issue and ordered the Football Leaks documents be stricken from record and sealed. 10-ER-1940 and 10-ER-1981–1982.

## B. KM NOTICED BUT VOLUNTARILY DISMISSED HER APPEAL FROM THE COURT'S ORDER STRIKING THE PRIVILEGED AND STOLEN FOOTBALL LEAKS DOCUMENTS.

On October 29, 2020, KM a filed a Notice of Appeal from the district court's Order Sustaining in Part Objection and Adopting and Modifying in Part Report & Recommendation, which sought to challenge the court's ruling as to "Ronaldo's motion to strike documents." 1-SER-0124–0126. On November 23, 2020, Ronaldo's counsel informed Stovall that Ronaldo intended to move to dismiss the appeal for a lack of jurisdiction because pursuant to 9 U.S.C. § 16, the subject order was neither final nor appealable. 5-ER-0721. Stovall confirmed by email that KM disagreed and would oppose the motion to dismiss. *Id.*

On November 28, 2020, Ronaldo timely moved to dismiss the appeal. *See* Case No. 20-17148 at Dkt. No. 5. On December 30, 2020, after obtaining two extensions of the deadline to oppose dismissal, KM opted to voluntarily dismiss the appeal without ever filing an opposition. *Id.* at Dkt. Nos. 6, 8-9 and 11; *see also* 5-ER-0723–0726 and

5-ER-0728–0732. On January 15, 2021, this Court granted KM's request to dismiss. *See* Case No. 20-17148 at Dkt. No. 12.[4]

### C. STOVALL RELENTLESSLY PERSISTED IN HIS USE OF PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS AND WORK PRODUCT TO PROSECUTE KM'S CLAIMS.

On November 24, 2020, the parties filed their Proposed Discovery Plan and Scheduling Order, with special scheduling review requested. 1-SER-0116–0123. On December 2, 2020, the district court entered its order granting in part and denying in part the parties' Proposed Discovery Plan and Scheduling Order. 10-ER-1914-1916. On December 22, 2020, the district court granted the first stipulation to extend the time for KM to object to the discovery order. 1-SER-0114–0115. On January 5, 2021, the Court granted KM another extension of time to object to the discovery order, making such objection due on or before January 8, 2021. 1-SER-0111–0113. Presumably, KM intended to object to the language in the order limiting the scope of discovery to

---

[4] KM's filing and dismissal of the appeal from the initial order striking the Football Leaks documents is of significance because it was not until thirteen months later when faced with case terminating sanctions that KM filed a motion to "amend" the order to strike, which the district court denied in the same order granting case terminating sanctions, which is the basis of the instant appeal. While the district court found no justification for such lengthy delay, it nevertheless entertained its merits stating, "...[KM]'s arguments boil down to the contention that [Ronaldo] failed to comply with federal or state rules of civil procedure governing the assertion of privilege. Those rules were in place with the same force one year ago as they are today, so I am inclined to deny this motion as untimely. But given that [KM's] arguments for reconsideration overlap with the issues undergirding the recommendation to dismiss this case, I address their merits ***and conclude that the original privilege finding was – and remains – sound.*** 1-ER-0014:7-13 (emphasis added).

preclude KM from conducting inquiries as to any issues beyond KM's legal capacity to contract at the time she entered into the SCA. In granting Ronaldo's motion to compel arbitration, the district court had ordered all claims to arbitration but "permitted KM's mental capacity challenge regarding her assent to the settlement agreement to proceed to a bench trial." 10-ER-1925–1936. Accordingly, the magistrate limited discovery to that which related to KM's "mental capacity defense – not what [Ronaldo] knew of her mental capacity but whether she had the mental capacity to assent to the settlement agreement at that time." 10-ER-1915. KM never filed any objection.

Thereafter, on February 2, 2021, KM first sent Ronaldo's counsel authorizations to obtain medical, employment and educational records. 5-ER-0734–0735. On February 9 and 12, 2021, KM's counsel emailed Ronaldo's counsel requesting deposition availability for Ronaldo, his prior lawyers and/or agents and counsel's availability for the deposition of mediator Joseph Bongiovi. 5-ER-0737–0738. On February 18, 2021, Ronaldo's counsel sent a letter to KM's counsel confirming Ronaldo would object to the taking of his deposition or any of his lawyers or agents at this stage in the proceedings as both irrelevant, pursuant to ECF No. 80 [10-ER-1914–1916], and an improper invasion of the attorney-client privilege. 5-ER-0740–0741. Ronaldo also enclosed an authorization for KM's signature to allow release of her prior attorney's full file. *Id.*

Having received no response, on March 19, 2021, Ronaldo's counsel sent two emails to KM's counsel – one seeking a status on the authorization for release of the prior attorney's file and a meet and confer if such authorization was not forthcoming; and a second email attaching a draft confidentiality and protective order and also requesting the parties agree to extend all upcoming discovery deadlines for 90 days. 5-ER-0743–0744. Again having received no response, Ronaldo's counsel reached out via email on March 29, 2021 asking for a status on the authorization for KM's prior lawyer's file, the draft confidentiality order, and whether KM would agree to extend discovery. 5-ER-0746–0747.

Stovall and Ronaldo's counsel spoke briefly on March 29, 2021, at which time Stovall declined to confirm whether he would agree to extend discovery or to enter into the confidentiality order, instead insisting that the parties formally meet and confer on March 30, 2021. 5-ER-0749–0752. The parties conferred on March 30, 2021, and despite having no articulable basis for refusing to extend the upcoming discovery deadlines or to agree to the confidentiality and protective order, Stovall declined to do so. Stovall likewise continued to insist the depositions of Ronaldo and his prior lawyers and agent(s) are somehow relevant to KM's mental capacity at the time of the mediation and signing of the SCA, so the parties remained at odds regarding the appropriate scope of discovery. 5-ER-0749 (Stovall's March 29, 2021 email correspondence stating, "…the Plaintiff [KM] has consistently taken the position that facts and specifically, the conduct of the Plaintiff [KM], observed by the attorneys,

11

investigator and mediator (and his staff) ***are not privileged***, are discoverable and relevant to the issue of capacity and the Defendant's [Ronaldo] knowledge thereof." (emphasis added); *see also* 1-SER-0065–0066.

During the meet and confer on March 30, 2021, Stovall further reiterated his insistence that the stolen Football Leaks documents remained relevant to KM's capacity to contract, and he believed he would be entitled to question witnesses regarding such communications. *Id.* In particular, Stovall maintained that he should be permitted to question Ronaldo's lawyers and/or agents regarding their knowledge of KM's mental state at or around the time of the January 12, 2010, mediation, which he asserted was substantiated by the documents labeled attorney-client communications and work product contained within the stolen Football Leaks documents. *Id.* On April 28, 2021, the magistrate entered an order granting Ronaldo's Motion to Extend Time for discovery. 1-SER-0060–0063. Particularly relevant here, the court again reiterated concern that KM is "laser focused on expanding the scope of this case." 1-SER-0061:26-27. Notably, KM's position was directly in contrast with the district court's earlier admonitions that what Ronaldo [and/or his agents] may or may not have known about KM's mental state was not relevant to her legal capacity to assent to the SCA. 10-ER-1915 and 10-ER-1934–1936

With discovery having been extended, both parties stipulated along with Joseph Bongiovi (the mediator at the time of the subject mediation) and Kathy Bongiovi (Mr. Bongiovi's office manager and wife), to have the Bongiovi depositions take place on

May 11 and 12, 2021. 1-SER-0049–0053. All parties also agreed to waive the mediator's statutory confidentiality privilege but that the Bongiovi's and their counsel would agree to be bound by any protective or confidentiality order in place in the case. *Id.* Additionally, the Bongiovi's and counsel for both parties agreed to provide any documents to be used at the time of the depositions at least one week in advance. *Id.*

On May 3, 2021, the day before the parties were scheduled to exchange documents for the depositions, Stovall emailed all parties indicating he needed additional time to prepare and would like to move them out about a month. 5-ER-0754. Stovall noted he was still reviewing additional documents he "just received" from the Defense. *Id.* Notably, Stovall had "just received" additional documents due to his own intransigence in refusing to sign a stipulated protective order and forcing Ronaldo to seek such relief from the court. Once the court granted Ronaldo's motion and entered the Protective Order on April 29, 2021, Ronaldo promptly produced documents that had been withheld on confidentiality grounds. 1-SER-0054–0059.

Specifically, Ronaldo hand delivered his Second Supplemental Disclosure of Documents to Stovall's office on April 30, 2021. 5-ER-0711 at ¶ 9. Within those confidential disclosures was the investigative file produced by LVMPD on April 22, 2021. *Id.* Although KM previously disclosed to Ronaldo the stricken Football Leaks documents, also included within LVMPD's investigative file are approximately 400 additional documents, which KM had not disclosed in this litigation, but which available evidence indicates Stovall provided to LVMPD. 6-ER-0945–7-ER-1210

(Documents identified as Bates Nos. KM00126-387); *see also* 8-ER-1533–10-ER-1857 (Documents identified as Bates Nos. CR-001188–1510). Of the approximately 400 additional documents, about half appear to be duplicates of attorney-client communications and work product that KM disclosed but which appear in a different format. *Id.* Nevertheless, more than 200 documents appear to be stolen attorney-client communications and work product Stovall likely obtained from Football Leaks and provided to LVMPD, but never disclosed to Ronaldo in the subject litigation.

Of particular note, within LVMPD's file is an Officer Declaration referencing an August 28, 2018 meeting with KM, at which time she provided a ██████████ ████████████████ 7-ER-1251. While the Officer's Declaration does not specify what was contained within the packet of information provided that day, nowhere does the Detective reference having independently requested documentation from anyone identified as "Football Leaks." *See generally* 7-ER-1249–1266.

In September 2018, KM gave an interview to a German publication called "Der Spiegel," which was highlighted in a lengthy article published on September 29, 2018. 5-ER-0757. Der Spiegel reported KM "possesses a document that could be extremely dangerous for [Ronaldo]. *Id.* Der Spiegel further noted KM's [then state court] Complaint was "supported by a 27 page document that "contains a version of how [Ronaldo] experienced that night…" 5-ER-0759. Not surprisingly, the Football Leaks documents provided to LVMPD also include various versions of a question and answer type document – all of which purports to be privileged attorney-client communications

14

and work product. 7-ER1270–8-ER-1349.  In fact, it appears KM herself relied on this Football Leaks question and answer document when attempting to fill in her own memory blanks during an interview with LVMPD: when asked who she came into contact with on the night in question, KM hesitated stating ███████████████████ ████████████████████████████████████████ 7-ER-1268.

During the course of communications regarding the rescheduling of the Bongiovi depositions, counsel for Ronaldo learned Stovall still intended to use at least portions of the Football Leaks documents during such depositions. 5-ER-0709–0716. Because Stovall has continually insisted that Ronaldo's knowledge of KM's mental state, if any, and that of his lawyers and agents, is relevant to the issue of capacity, Ronaldo requested a meet and confer on the issue to ascertain the manner in which KM intended to utilize such documents. *See* 5-ER-0781; *see also* 5-ER-0709–0716. Ronaldo's counsel specifically requested the meet and confer be held before a court reporter so the parties would have a recorded transcript of counsels' respective positions and representations.  *See* 5-ER-0783–0791; *see also* 5-ER-0709–0716. Stovall, on behalf of KM, refused to meet and confer on the record, insisting that recording such meetings violates the spirit of the local rule and accusing Ronaldo's counsel of trying to obtain "admissions" for motion practice.  *Id.*

Counsel subsequently met and conferred without the presence of a court reporter, at which time Stovall agreed the Football Leaks documents contain communications between Ronaldo and/or Ronaldo's lawyers, which "arguably" fall

15

within the attorney-client privilege. *See* 5-ER-0709–0716. Stovall indicated he did not intend to use as deposition exhibits, the attorney-client communications that have been stricken. *Id.* However, Stovall reaffirmed his belief the other Football Leaks documents are fair game despite Ronaldo's counsel noting the Football Leaks documents were stolen and obtained from a cyber hacker, could never be authenticated and had been stricken from the record and sealed by the court. *Id.* Stovall asserted that despite the court's order granting the entirety of Ronaldo's Motion to Strike, KM did not view the court's order as having stricken all of the Football Leaks documents. *Id.* At no time during the meet and confer did Stovall disclose he had obtained additional documents from Football Leaks, which KM apparently provided to LVMPD, but which Stovall never provided to Ronaldo. *Id.*

On May 23, 2021, Ronaldo's counsel emailed Stovall and requested confirmation that the entirety of the Football Leaks documents contained within LVMPD's file, bates numbered by Ronaldo as CR000926 through CR001510 [7-ER-1270–10-ER-1857], were submitted by Stovall and/or KM or someone acting on her behalf as opposed to another source. 5-ER-0795. Stovall did not directly respond to that email or particular question but did send a letter on May 25, 2021 regarding, "several issues discussed during the May 17, 2021 'meet and confer.'" 5-ER-0797–0801. Within that letter, Stovall addressed in relevant part, the "Use of Privileged Documents During Discovery," and the "Use of Stolen Football Leaks Documents During Discovery." *Id.* Although Stovall stated he agrees the attorney client privilege

applies to the communications between the Ronaldo and his attorneys and communications between Ronaldo's attorneys, he reiterated his belief the attorney-client privilege does not extend to communications or documents exchanged between Ronaldo or Ronaldo's attorneys and the mediator, Ronaldo or Ronaldo's attorney and KM's attorney, or KM's attorneys and the mediator. *Id*.

Curiously, **none** of the Football Leaks documents that KM actually disclosed to Ronaldo in this litigation, contain non-privileged communications between KM's prior lawyer and Ronaldo's prior lawyers, or any of the lawyers and the mediator. *See* 6-ER-0920–7-ER-1210. Tellingly, those communications are however, contained within the Football Leaks documents contained in LVMPD's file but never disclosed by KM to Ronaldo. *See id*.; *see also* 7-ER-1249–10-ER-857. Stovall went on to dispute whether the Football Leaks documents were "stolen," indicating in pertinent part, "It is not known how or when the documents identified in this case as 'Football Leak' [sic] documents were originally obtained. What is known about these documents is that they were obtained by an internet query by plaintiff's [KM] counsel." 5-ER-

17

0798–0799. Stovall concluded by asserting, "whether the documents identified in this [sic] were stolen or not, ignores the issues material to this case." 5-ER-0799. [5]

In short, Stovall agreed to not use as exhibits, certain attorney-client privileged communications he specifically sought from a third party identified as "Football Leaks" prior to this litigation, but never indicated he would forego using any knowledge gained from his extensive review of those documents. To the contrary, Stovall reiterated his opinion that the [SCA] was illegally obtained, which was "merely a restatement of the allegations in the complaint," – allegations Stovall repeatedly ignored are derived from KM's review of the stolen, protected and privileged Football Leaks documents. Moreover, KM, through Stovall, affirmatively intended to conduct discovery regarding what Stovall referred to as the "non-privileged communications"[6] contained within the Football Leaks documents – documents he intentionally sought from an outside third party with zero regard for when and how the accused cyber

---

[5] Notably, Stovall initially claimed ignorance as to the origin of the additional Football Leaks documents contained within LVMPD's file but not disclosed to Ronaldo. Stovall later reversed course and affirmatively stated he had not provided them to LVMPD. Affording Stovall the benefit of the doubt, the district court opted to ignore these documents for the purpose of its analysis and thus, they do not form any part of the basis for the court's decision to grant case terminating sanctions. 1-ER-0031–0032.

[6] Stovall referred to communications between Ronaldo's counsel and the mediator as "non-privileged." However, under Nevada law, the mediation privilege would nevertheless apply and still shield such documents from disclosure. Nev. Rev. Stat. § 48.109.

18

hacker obtained protected and confidential materials; and some of which Ronaldo only obtained after serving a subpoena for the full LVMPD file.

Because it had become clear that KM and Stovall's knowledge of the ill-gotten Football Leaks documents had permeated the litigation, tainted the truth finding process and resulted in prejudice to Ronaldo that could not be remedied by any sanction less than dismissal, Ronaldo successfully moved for case terminating sanctions. It is especially noteworthy that in opposition, KM never once took issue with the severity of the sanction to be imposed.

Rather, KM maintained simply that Ronaldo was not entitled to the protections of the attorney-client and work product privileges. She has never argued that even assuming the Football Leaks documents are in fact, privileged and protected, dismissal of the complaint is not the appropriate remedy and unjustly punishes KM. Nevertheless, the district court did not take lightly the granting of such sanctions and went to great lengths to specify the basis for its weighty decision, to that end, noting:

> The magistrate thoughtfully considered less severe sanctions here but concluded that nothing short of dismissal can adequately penalize Stovall's bad faith actions and cure the prejudice to the defense. He reasoned that it would be nearly impossible for this court or the arbitrator to excise the misappropriated documents from this case because [KM's] independent recollection of events was certainly enhanced or altered by what she learned through her review of these privileged communications and Stovall's other filings incorporated them…
>
> Of course, this court is sensitive to the gravity of case-terminating sanctions here. Because of her attorney's abuses and flagrant circumvention of the proper litigation process, [KM] loses her opportunity to pursue this case and attempt to unwind the settlement of

claims that, themselves, implicate serious allegations of a highly personal nature. But in light of the depth and breadth with which the ill-gotten information has saturated her claims and other filings – and likely memory of key facts – any other sanction would be an inadequate remedy…

1-ER-0042:3-9 and 1-ER0043:15-0044:1. The justification underlying the severity of case terminating sanctions is also fully addressed in Ronaldo's Motion for Dismissal and/or Disqualification, and the district court orders at 6-ER-0849–10-ER-1913, 2-ER-0175–0192, 2-ER-0063–0085, and 1-ER-0003–0044. However, because KM has not raised the issue on appeal, it is waived, and thus, not addressed herein.[7]

## IV.   **SUMMARY OF ARGUMENT**

Ruling in favor of Ronaldo and dismissing KM's complaint, the Honorable Judge Jennifer A. Dorsey noted this Court has long recognized case terminating sanctions "must be available to the district court in appropriate cases, not merely to penalize those whose conduct many be deemed to warrant such a sanction but to deter those who might be tempted to such conduct in the absence of such a deterrent." 1-ER-0043:6-9 (citing *In re Phenylpropanolamine (PPA) Prods. Liab. Lit.*, 460 F.3d 1217, 1227 (9th Cir. 2006)(*quoting Nat'l Hockey League v. Metro Hockey Club, Inc.* 427 U.S. 639, 643 (1976)). On that basis, the district court affirmed the magistrate's unequivocal and "astute" determination that, "Anything less than case terminating sanctions would create the dangerous precedent that, so long as a party is willing to

---

[7] *Wanat*, 970 F.3d at 1213-14.

risk changing attorneys or paying a fine, they can use privileged information to prosecute, and maybe even win, their case. 1-ER-0011-0014 (citing ECF No. 143 at 22 [2-ER-0084]).

Setting aside that the documents were obtained in response to direct and specific requests for attorney client communications and readily appear on their face to be exactly that, KM herself established the privileged nature of numerous documents. Indeed, in trying to convince the district court the crime-fraud exception should apply, KM dedicated page after page of her oppositions to dismissal to quoting undeniably privileged communications between Ronaldo's lawyers. *See generally* 5-ER-0633–0646. In her Opening Brief before this Court, KM doubles down on her reliance on the privileged documents, again quoting at length to communications among Ronaldo's counsel. In short, there is no dispute the subject Football Leaks documents contain hundreds of pages of privileged attorney-client communications and work product – precisely what KM explicitly sought and obtained more than fourteen months before ever disclosing them to Ronaldo and his counsel.

When KM could not convince the district court that Ronaldo's lawyers unwittingly failed to take measures to safeguard what are irrefutably privileged documents against cyber theft, she still was not to be deterred. KM continues through today to persist in her relentless attempts to convince this Court that Ronaldo somehow waived the attorney-client privilege. KM maintains the unavailing argument CR waived privilege when he 1) purportedly put the Football Leaks documents at issue by

21

seeking to have them stricken and again with his request for case terminating sanctions; and 2) by purportedly failing to comply with Fed. R. of Civ. P. ("FRCP") 26.

It is disingenuous at best for KM to assert it was Ronaldo who put the Football Leaks documents at issue – KM first put the documents at issue by attaching them to her opposition to Ronaldo's motion to compel arbitration. *See* 11-ER-2051–2297. Ronaldo did not WAIVE privilege by ASSERTING privilege nor by seeking sanctions for KM's repeated use of the stricken, hacked documents. *See* 1-ER-0028:12-16.

KM's assertion that Ronaldo's alleged failure to technically comply with FRCP 26 somehow waived the protections of the attorney-client or work product privileges is likewise unpersuasive. KM claims Ronaldo was required to provide a privilege log specifically identifying which of the Football Leaks documents are privileged and the basis for the asserted privilege. Yet the purpose of a privilege log is to describe withheld documents "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." 1-ER-0020 3:3-6 (citing Nev. R. Civ. P. 26 and FRCP 26(b)(5)(A)(ii).

Here, KM herself was the one to procure and produce the Football Leaks documents. Indeed, she held them for more than fourteen months before ever producing them to Ronaldo in the litigation and the documents readily appeared on their face to be privileged. Thus, production of a privilege log would have been an exercise in futility – she knew the content, authors and dates of the documents long

before disclosing them to Ronaldo. Requiring Ronaldo to produce a detailed privilege log documenting details KM already possessed would not only run afoul of the spirit and purpose of the rule, but also reward KM's misdeeds. *See* 1-ER0020:10-0021:11.

KM ignores both law and logic yet again when arguing Ronaldo is judicially estopped from seeking disqualification and/or dismissal because he initially sought only to have the Football Leaks documents stricken while at the same time noting disqualification may have been an available remedy. First, asserting privilege and seeking to have documents stricken is not mutually exclusive with seeking disqualification of counsel or dismissal. Rather, striking (or sealing) the documents is the procedural vehicle by which to ensure the privileged and confidential materials do not become part of the public court record. Successfully obtaining such relief does not necessarily foreclose a sanction for the misconduct that placed such sensitive documents at risk in the first instance. Judicial estoppel can only apply where a party successfully asserts one position and later forwards a totally inconsistent position, which if granted, would result in an unfair advantage. *Hendricks & Lewis PLLC v. Clinton*, 766 F.3d 991, 1001 (9th Cir. 2014). Here, Ronaldo's resolve has remained consistent and steadfast.

Finally, KM claims the district court erred in refusing to grant *in camera* review of the Football Leaks documents based on application of the crime-fraud exception. The crime-fraud exception exists "to assure that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice

23

for the commission of a fraud or crime." 1-ER0023:19-0024:2 (citing *United States v. Zolin*, 491 U.S. 554, 563 (1989). Under *Zolin*, a district court may conduct an *in camera* review of attorney-client privileged documents to assess whether they contain evidence of an ongoing or future crime such that the privilege ought not apply. However, before a court must conduct such a review, the requesting party is obligated to present **non-privileged** evidence "sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability." 1-ER0024:2-7(citing *Zolin*, 491 U.S. at 574-75). KM's request for *in camera* review fails because her argument that any evidence of an ongoing crime or fraud exists is based solely on either citation directly to the privileged Football Leaks documents or evidence derived solely from the confidential and privileged communications and thus, also insufficient to make the required showing under *Zolin.*

Simply, there is absolutely no admissible evidence, much less evidence that is both admissible and non-privileged, that would tend to show Ronaldo and his lawyers were engaged in any fraudulent or criminal scheme. To the contrary, it is undisputed that KM accused Ronaldo of sexual assault and rather than pursue criminal charges, opted to ignore law enforcement for a decade and instead, pursue a civil monetary settlement. The totality of evidence before the district court demonstrates that KM's prior lawyer reached out to Ronaldo's prior counsel and management team in 2009

before Ronaldo knew KM was making accusations for which he needed a lawyer[8]– a far cry from the conspiracy theory KM has attempted to forward before the media and courts since the filing of her complaint more than a decade after the alleged sexual encounter.  There is no evidence upon which the district court could have found the crime-fraud exception may apply to grant *in camera* review.  Its denial should be affirmed.

## V.   <u>ARGUMENT</u>

### A. THE DISTRICT COURT DID NOT ERR WHEN IT REPEATEDLY RULED RONALDO NEVER WAIVED THE ATTORNEY-CLIENT OR WORK PRODUCT PRIVILEGES.

Stovall, on behalf of KM, has acted intentionally and with a complete disregard for the integrity of the judicial process and the sanctity of the attorney-client privilege.  Tellingly, Stovall has never disputed whether the severity of dismissal is the appropriate sanction for the litigation misconduct at issue here.  Rather, KM and Stovall hang their hats solely on the misguided premise that Ronaldo somehow unwittingly or perhaps intentionally, waived the protections of the attorney-client and work product privileges.  Nonsense.  Just as the district court properly found on several occasions, this Court should affirm that Ronaldo and his counsel have repeatedly taken steps to protect the sanctity of these privileges, which are the very bedrock of our justice system.

---

[8] 10-ER-2004–2005.

### 1. The stricken Football Leaks Documents are Undeniably Protected and Privileged Attorney-Client Communications and Work Product.

KM argues the district court erred in finding that Ronaldo did not waive the attorney-client and work product privileges by failing to identify privileged materials in a manner sufficient to invoke such protections; not taking adequate steps to safeguard the privileged materials; and further by placing privileged documents at issue in the underlying litigation.

KM aptly notes that a district court's conclusions regarding the applicability of the attorney-client privilege are mixed questions of law and fact, which this Court reviews independently and without deference to the district court. *United States v. Graf*, 610 F. 3d 1148, 1157 (9th Cir. 2010)(citing *United States v. Ruehle*, 583 F.3d 600, 606 (9th Cir. 2009)). Rulings as to the scope of the attorney-client privilege are reviewed de novo while factual findings are reviewed only for clear error. *Id.* A factual finding will be deemed clearly erroneous only where it is "illogical, implausible or without support in the record." *Id.*

Although KM correctly identifies the standard of review as a mixed one, she fails to specify which findings she asserts are factual versus legal in nature. Thus, neither Ronaldo nor this Court may ascertain which conclusions KM contends should be reviewed de novo as opposed to those which are factual and subject to reversal based upon only clear error. All the more puzzling, KM ultimately applies an entirely different standard, arguing it was an "abuse of discretion" for the district

court to conclude Ronaldo did not waive privilege by disclosing the Football Leaks

documents to KM as a *[SEALED]* exhibit to his Motion for Case Terminating

Sanctions.  Opening Brief at p. 47.[9]

        i.    <u>Ronaldo Specifically Identified the Privileged Nature of the Football Leaks Documents and KM has Repeatedly Conceded such Documents are Privileged</u>.

Relying on a September 2021 decision from the Nevada Supreme Court, KM

continues to argue Ronaldo has waived such protections by failing to sufficiently

identify which of the Football Leaks documents he asserts are privileged and also

by not providing a privilege log. Opening Brief at pp. 38 and 43-45 (citing in

significant part to *Superpumper, Inc., v. Leonard*, 495 P.3d 101, 107 (Nev. 2021)).

However, the *Superpumper* decision did not change the threshold showing required

to claim the protections of the attorney client privilege.  *Id.* at 107.  As KM directly

quotes, the Nevada Supreme Court simply reiterated that pursuant to Nev. R. C. P.

---

[9] KM claims Ronaldo waived the privilege by attaching the Football Leaks documents to his Motion for Case Terminating Sanctions and then doing "nothing to recover or protect" the documents during the time after filing of his motion through the entry of dismissal.  Opening Brief at pp. 46-47.  What exactly Ronaldo might have done during that time or from whom he should have sought protection remains unclear.  The documents were filed under seal and KM was the first to obtain and disclose the purloined materials in the first instance.  In any case, KM also fails to inform this Court during that same timeframe, media outlets did in fact, attempt to obtain LVMPD's file, which included the Football Leaks documents and Ronaldo fought to preclude release of such documents both before the district court and Nevada state courts.  *See* Ronaldo's Motion to Maintain Seal and Reply brief in support thereof on file herein at Dkt. Nos. 31 and 28; *see also* Appellant's Further Excerpts of Record ("FER") at FER0029–0038.

("NRCP") 26(b)(5)(A), the party asserting the attorney-client privilege, "must…[expressly make the claim]…and describe the nature of the documents, communications, or tangible things" so as to "enable other parties to assess the claim.'" *Id.*; *see* Opening Brief at p. 36.

What KM fails to acknowledge is that both NRCP 26(b)(5)(A), and its identical federal counterpart, FRCP 26(b)(5)(A), explicitly state the required disclosure is to be made in a manner that ***does not reveal*** the information that is "itself privileged or protected," but nevertheless allows other parties to "assess the claim." Given that KM deprived Ronaldo of this protection by intentionally seeking out, obtaining, reviewing and relying on the stolen confidential and privileged information for fourteen months prior to disclosure, the technical application of either rule is questionable. Equally as troublesome, KM ignores that Ronaldo nevertheless expressly asserted the privilege the day immediately following KM's first disclosure of the subject documents. 5-ER-0719. Ronaldo then promptly moved to have the Football Leaks documents stricken, citing in great detail to particular categories of documents within the Football Leaks documents as a whole, identifying those categories by bates number and describing the nature of the privileged communications and work product. 10-ER-2037–2049.

KM's assertion that Ronaldo failed to identify which of the Football Leaks documents are at issue and which constitute attorney-client communications and work product, is ***patently false***. Despite acknowledging and in fact, having moved

for reconsideration of Ronaldo's initial Motion to Strike and Maintain Under Seal the Football Leaks documents, KM apparently failed to read or comprehend its contents. Indeed, the motion, filed more than two years ago in November 2019, specifically cites to and describes with particularity which of the documents are privileged communications, some of which also contain counsel's mental impressions, legal theories and conclusions; which are communications among Ronaldo's lawyers and investigators; and those which are work product.[10]

As if that were not enough, Ronaldo's Motion for Case Terminating Sanctions and supporting Reply brief again pointed the court to particular citations to Football Leaks documents consisting of attorney-client communications and

---

[10] *Id.* (citing to ECF 44 [11-ER-2051–2297] at Exhibits 4 and 5 and identifying documents contained therein and bates numbered 0033-73 and 0254-257 as correspondence between defense counsel and their client(s) made in furtherance of the rendition of legal services; citing documents 0003-32 as communications between Ronaldo's counsel and investigators who were hired by his lawyers to assist counsel with their rendition of legal services and thus, by definition "representatives of the lawyer;" further specifying that documents numbered 0003-73 and 0254-257 are replete with references to and reflect counsel's mental impressions, legal theories and conclusions and thus, constitute both protected attorney-client communications and attorney work product; identifying documents numbered 0074-0122 as comprised entirely of correspondence between co-counsel for Ronaldo in which they provide a detailed analysis of their investigation, interviews, mental impressions, conclusions, legal theory and strategy in furtherance of providing Ronaldo with legal advice and services; and finally stating that even if documents numbered 0175-253 are recitations of a question and answer session with Ronaldo as KM contends. then they go to the very heart of the attorney-client privilege – that is to facilitate and protect candid communications between the attorney and client to promote the administration of justice. Moreover, documents numbered 0175-253 not only contain what KM asserts are attorney-client communications, they are abound with notes containing impressions of counsel, strategy and legal theories).

work product. 6-ER-0844–10-ER-1913 and 2-ER-0194–0443. Ronaldo's

identification of such privileged materials is further substantiated by declarations

from his prior attorneys, Carlos Osorio De Castro and Richard Wright, Esq. *See* 2-

ER-0188–0189 and 2-ER-0191–0192. Mr. Wright specifically affirmed:

> 5. Having reviewed certain of the pleadings and papers on file in the
> instant litigation, I am aware that Mr. Stovall obtained from a source
> known as Football Leaks, confidential attorney-client communications
> and work product related to the matter arising from Ms. Mayorga's
> allegations against Mr. Ronaldo.

> 6. In particular, I am aware Mr. Stovall represents that he produced to
> the Las Vegas Metropolitan Police Department documents he obtained
> from Football Leaks, portions of which I have reviewed and attest are
> privileged attorney-client communications between myself and my law
> firm and other lawyers jointly representing Mr. Ronaldo as well as
> privileged attorney work product. By way of example, documents
> identified in this litigation as CR-001222-1226, which I am informed are
> included in Sealed Exhibit P to the instant motion, are privileged
> attorney-client communications, attaching my privileged work product.

2-ER-0191–0192.

Moreover, KM herself has identified the privileged nature of the at issue

communications. To avoid any doubt, attendant to KM's opposition to the

underlying motion for case terminating sanctions, KM also brought a motion for *in*

*camera* review of the Football Leaks documents, in which she cited for pages to

communications between Ronaldo's lawyers in an unsuccessful bid to convince the

court the crime-fraud exception should apply. 4-ER-0613–0631 (specifically 0623–

0628). The magistrate denied *in camera* review, which the district court affirmed,

both finding no evidence that Ronaldo engaged lawyers in order to further any

ongoing fraudulent or criminal scheme. 2-ER-0070–0076 and 1-ER-0023–0027. KM also now appeals those orders. Despite being expressly cautioned against continued reliance and direct quotations to the stolen and privileged communications,[11] KM now takes an even deeper dive into the intricacies of correspondence among Ronaldo's lawyers and investigators. Opening Brief at pp. 12–18

There can be no good faith assertion that Ronaldo failed to sufficiently assert and identify the applicable attorney-client and work product privileges. Under both longstanding state and federal law, the subject Football Leaks documents consist almost entirely of privileged communications among Ronaldo's lawyers and investigators. Any notion Ronaldo somehow waived the privilege by failing to give adequate notice of the nature of the claimed privilege should be summarily rejected.

In reviewing the extensive arguments and record before it, the district court correctly concluded, "…I find that the defense satisfied the spirit, if not the letter, of NRCP 26(b)(5)(A) under the unusual circumstances present here." 1-ER-0021:16-17. With KM having provided the district court with page after page of direct quotations to the Football Leaks documents, the court further concluded, "The Football Leaks documents are textbook examples of materials that fit squarely in the heartland of Nevada's attorney-client privilege and the federal work-product

---

[11] 1-ER-0038:19–37:08.

doctrine…Plaintiff's technical arguments do not change the purely privileged nature of these documents." *Id*. at 0023:1-2; 11-12. These factual findings have extensive support in the record and KM simply cannot show clear error.

    ii.    <u>Ronaldo was Not Required to Prepare a Privilege Log because KM Unilaterally Requested and Obtained ALL of the Subject Documents and Knew Their Contents</u>.

KM contends Ronaldo's failure to produce a "privilege log" specifically identifying the particular nature of each and every document precludes a finding the subject documents are in fact, confidential and privileged. Opening Brief at p. 40. KM yet again ignores that Ronaldo did in fact, specifically explain and identify the basis of the asserted privileges. Even more baffling, KM fails to explain what purpose a privilege log could possibly serve when she and Stovall already obtained, reviewed, digested and relied upon ALL of the stolen privileged Football Leaks documents. The reason for production of a privilege log is to allow the opposing party to sufficiently ascertain the basis for the claimed privilege without first

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

having obtained the privileged material itself.  *See* FRCP 26(b)(5)(A) and NRCP

26(b)(5)(A).  As the district court pointedly explained:

> The purpose of a privilege log is to inform other parties of the existence
> of documents that may be relevant to a case but will not be turned over.
> That purpose did not exist here because the plaintiff [KM] disclosed
> defendant's [Ronaldo's] privileged documents in the first place.  Indeed,
> plaintiff [KM] – or more accurately, plaintiff's [KM] counsel – was in a
> position to intuit the privileged nature of the documents when he
> specifically asked a shady source for documents containing prior defenses
> counsel's purloined communications.

1-ER0021:02-07.

KM herself obviated the need for any privilege log because KM unilaterally

sought, obtained, reviewed, digested and relied upon ALL of the privileged

materials without disclosing she possessed the documents for more than fourteen

months.  KM did not need a privilege log to enable her counsel, Stovall, to assess

the claim of privilege because both KM and Stovall had the documents, which

contained hundreds of pages of materials readily appearing on their face to be

attorney-client privileged communications and/or work product.  As the district

court found, KM's argument that Ronaldo had to produce a privilege log in order

to assert privilege "elevates form over substance."  1-ER-0021:1-2. This is yet

another factual finding with ample support in the record and cannot be disturbed

absent a finding of clear error, for which there is none.

/ / /

/ / /

### 2. Ronaldo, at all Times, Protected the Attorney-Client Communication and Work Product Privileges.

To no avail, KM has repeatedly argued Ronaldo failed to adequately safeguard the Football Leaks documents and neglected to act promptly to prevent further dissemination upon learning of the cyber-hack. Opening Brief at pp. 29-34. Squarely rejecting those contentions, the district court stated, "Ronaldo's attorneys immediately undertook efforts to prevent Der Spiegel from reporting on Mayorga's accusations and also sought preliminary injunctions to prevent further dissemination of the Football Leaks documents." 1-ER-0004:15-0005-15 (citing ECF No. 111-26 at 3-5; 7-32); *see also* 5-ER-0812–0842.

### i. The attorney-client privilege is not waived through public disclosure of a stolen privileged document.

KM does not dispute that her counsel obtained the Football Leaks documents from an accused cyber hacker – ultimately the target of an international criminal prosecution. In response to Ronaldo's motion to have the Football Leaks documents stricken, KM attempted for the first time to shift blame for Stovall's misconduct to Ronaldo and his counsel. Apparently, if Ronaldo's lawyers had done more to avoid becoming victims of cyber theft, Stovall would never have been tempted to obtain and use stolen and privileged attorney client communications. That misconduct aside, public disclosure of a stolen, private document does not waive privilege.

Curiously, on appeal, KM asserts it was the district court and Ronaldo to rely on *Teradata Corp. v. SAP SE*, 2019 US Dist. LEXIS 100337 (N.D. Cal. June 14, 2019), in finding Ronaldo had not failed to protect the Football Leaks documents. In reality, it was KM who initially relied on *Teradata*, but miscited the case and grossly misrepresented its holdings. Only when Ronaldo accurately explained the true basis for the decision did the district court opt to rely on the analysis. 10-ER-1986–1989 and 10-ER-1940. To date, KM continues to misconstrue the impetus for the *Teradata* decision, now laser focused on the disclosure of privileged documents having been to a "media outlet," apparently asserting *Teradata* is inapposite because "Football Leaks" may not be a media outlet." Opening Brief at pp. 29-34."

Yet *Teradata* is much like this case – right down to the involvement of media outlet Der Spiegel. Teradata brought suit against SAP based in significant part, upon information that Der Spiegel published after SAP's internal documents and correspondence were hacked. 2019 U.S. Dist. Lexis 103337 at *2. Although the magistrate there initially found SAP had waived any applicable privileges, the district judge overruled, noting the sole authority on which the finding of waiver was based "does not apply in the context of ***involuntary disclosure to a media outlet***." *Id.* at *5-6 (citing to *Dukes v. Wal-Mart Stores*, 01-cv-252 CRB(JSC), 2013 U.S. Dist. LEXIS 42740, 2013 WL 1282892 (N.D. Cal. March 26, 2013)(emphasis added)).

In *Dukes*, an attorney-client memo had been involuntarily leaked to the NY Times, which had then published an article discussing the memo at length. Approximately eight months after the article was published, an unknown individual sent plaintiff's counsel a copy of the leaked memo. Recognizing the memo was marked as privileged [just as are the attorney-client communications and work-product in this case], plaintiff's counsel in *Dukes* sequestered the memo, did not further review it and promptly sought a ruling on waiver from the court. *Id.* The district judge determined that waiver must be determined by the steps taken to maintain confidentiality prior to a leak, not based on whether anything was done to retrieve the privileged document[s] from the media outlet. *Id.*

The district judge in *Teradata* adopted the analytical framework from *Dukes* and returned the issue of waiver to the magistrate to resolve, "whether the steps SAP took with respect to the audit related [leaked] documents prior to the disclosure to Der Spiegel or the steps it took once it was on sufficient notice of the use of privileged information ***in [the] litigation*** were reasonable to maintain its assertion of privilege." 2019 U.S. Dist. LEXIS 100337 at *8 (emphasis added). Ultimately, the magistrate concluded because SAP had taken appropriate measures to maintain the confidentiality of the subject documents, it had not waived the applicable privileges. Case No. 3:18-cv-03670-WHO, ECF No. 172 (September 9, 2019) at 32-34. In particular, SAP required employee signatures on employment agreements promising to maintain the confidentiality of SAP materials, restricted

access to the audit [leaked] materials and conspicuously designated audit related materials as confidential.  *Id.* at 32.

SAP had also acted promptly upon learning that Teradata had possession of the privileged documents that had been stolen and was relying upon them in the litigation.  *Id.* at 33-34.  Shortly after receiving Teradata's production containing the privileged documents, counsel for SAP emailed opposing counsel alerting him to the privilege issue, sought return of the documents and requested relief from the court when Teradata refused.  *Id.*  Ultimately, the court concluded that SAP had taken appropriate precautions in safeguarding its confidential documents and had acted reasonably when it learned Teradata intended to use those documents against it in litigation.  *Id.* at 36.

Similarly, the district court here also found that Ronaldo's counsel "immediately took action," upon learning Der Spiegel had published an article, which made clear its source documents included communications among Ronaldo's lawyers that had been "stolen from their databases despite safeguards meant to protect confidential client information."  1- ER-0004:11-0005:2 (internal citations omitted). The court noted Ronaldo's lawyers undertook efforts to prevent Der Spiegel from reporting on Mayorga's accusation and also sought preliminary injunctions to prevent further dissemination of the Football Leaks documents.  *Id.*

KM now alludes to the idea that Ronaldo should have surmised with the filing of her state court and federal Complaints that she had obtained the purloined and

privileged materials. Yet this is belied by the very careful crafting of both complaints to omit any reference to Ronaldo's lawyers. 1-ER- 0034:10:14 (based upon a review of both Complaints, the district court found, "Counsel carefully worded those complaints to obscure the fact that [Ronaldo's] 'team of fixers' – whom he identified as Doe and Roe Defendants in the state-court complaint, despite knowing their names, and ultimately dropped as defendant in this lawsuit – was in fact, a team of lawyers, and that quoted communications between those 'fixers' were largely hacked, internal emails between [Ronaldo's] attorneys.").

Moreover, the day after KM first disclosed possession of the Football Leaks documents, more than nine months into the litigation, Ronaldo's counsel emailed Stovall cautioning him as to the privileged nature of the documents and warning him Ronaldo would move to strike – just as he did. 1-ER- 0029:5-7. At every turn thereafter, Ronaldo fought to shield the Football Leaks documents from further use, which ultimately culminated in this appeal.

Thus, just as in *Teradata* and *Dukes,* Ronaldo and his counsel maintained safeguards to secure the privileged materials prior to the hack and subsequent to the litigation and consistently acted promptly in response to learning the Football Leaks had fallen into the wrong hands. These factual findings are clear, unequivocal and supported by uncontroverted evidence. Accordingly, it was not clear error for the district court to find that Ronaldo did not waive the attorney-

client privilege by failing to produce a privilege log or to properly safeguard the Football Leaks documents and its decision should not be disturbed on appeal.

    ii.   <u>Ronaldo's Attorneys are Not to Blame for Stovall's Misconduct and they are Irrelevant to this Court's Analysis.</u>

KM now raises for the first time on appeal the argument that the SCA required Ronaldo's attorneys to maintain the original executed SCA and side letter agreement in a safety deposit box, to which only the signatory attorneys would have access. *See* Opening Brief at p. 28. KM further points out that her prior counsel was also required to sign a non-disclosure agreement. *Id.* Setting aside that issues raised for the first time on appeal are waived,[12] it remains unclear how either of these propositions matter in the slightest to the instant appeal.

There is no allegation that any alleged thief managed to procure the original signed copies of the SCA and related side letter agreement. But in any event, the signed SCA, while confidential and ultimately sealed in this case, is not protected by the attorney-client communication or work product privilege. To the contrary, the documents were exchanged by counsel for both sides and KM herself, at one time, possessed, read and signed the document. Public disclosure of the SCA would certainly have been a breach of the parties' agreement. However, it is not the litigation misconduct upon which the district court based its dismissal. Thus,

---

[12] *See Wanat*, 970 F.3d at 1213-14.

whatever Ronaldo's lawyers may or may not have done to protect these original documents is of no import to this Court's analysis.

KM returns to an argument she has repeated time and again, yet still fails to cite a single legal authority to support her position. Specifically, KM contends Ronaldo has somehow waived the attorney-client or work product privileges by objecting to the authenticity of the subject football leaks documents. Opening Brief at pp. 34–38. However, Ronaldo's objections based on the authenticity and privileged nature of the Football Leaks documents are not mutually exclusive. To be clear, Ronaldo has consistently maintained that, 1) the subject documents cannot be authenticated because they were stolen by a cyber hacker; and 2) the documents, on their face, are readily apparent as privileged attorney-client communications and work product. In fact, KM and Stovall attempted to justify their litigation misconduct by asserting they were not the party to "steal" the subject documents and asked the district court to ascertain the origins of the documents before deciding Ronaldo's sanctions motion. 2-ER-0080:17-23. Because KM and Stovall concede they cannot confirm their origin, KM cannot possibly demonstrate authenticity of the Football Leaks documents for purposes of admissibility. Moreover, as the district court pointed out, "…Plaintiff's [KM] protestation that the defense has not strictly complied with the discovery rules, when it was her attorney's misconduct that prevented the usual process from playing out, is ***not well taken***." 1-ER-0019:11, n. 93 (emphasis added).

The magistrate's Report and Recommendations, which the district court resoundingly affirmed, likewise rejected KM's attempts to justify such misconduct, noting, "…the origins of the Football Leaks documents are too suspicious for Stovall to have ignored in good faith. Stovall was rebuffed in his initial attempts to get the documents from Der Spiegel and Mayorga's former counsel. Ignoring this red flag, Stovall then emailed Football Leaks, asking specifically for privileged material while making no attempt to justify the source." 2-ER-0080:22-25. Simply because KM cannot show authenticity of the documents does not negate that she and Stovall sought out and received what very clearly appear, even at first glance, to be privileged attorney-client communications and work product.

### 3. Asserting the Privilege Does Not Amount to Waiving the Privilege.

In absolute defiance of all logic and common sense, KM argues Ronaldo somehow voluntarily waived the attorney client privilege by providing the district court, under seal, with copies of documents KM had already obtained, reviewed, digested, relied upon and provided to LVMPD requesting that it reopen its criminal investigation into the facts underlying this case – documents which are also the subject of orders striking the privileged materials from the record in this case. Opening Brief at pp. 33 and 44-46. Ignoring that KM herself attached the subject Football Leaks documents as exhibits to her Opposition to the Motion to Compel

Arbitration, in response to which Ronaldo successfully moved to have such documents stricken from the record and maintained under seal, KM begs the courts to find Ronaldo voluntarily waived his privilege by moving to have the documents stricken; and then by moving for case terminating sanctions when KM continued to persist in her unrelenting quest to utilize the stolen and privileged communications to prosecute her claims. *Id*. Accepting KM's argument as true would mean Ronaldo effectively had no remedy by which to demonstrate to any court that KM and Stovall have continued to violate the district court's express directive striking the privileged documents.

Moreover, the LVMPD file was obtained pursuant to subpoena but the full file was only produced, subject to a Confidentiality and Protective Order (1-SER-0054–0059) and pursuant to a joint request and authorization signed by KM. 1-SER-0013–0014; *see also* 1-ER-0010:03-04. In reality, either party could have obtained the full file containing the stolen, confidential and privileged Football Leaks documents. Additionally, the privileged Football Leaks documents in LVMPD'S file appeared to have all originated from KM and/or Stovall. Accordingly, KM's assertion that Ronaldo waived the privilege by producing a jointly requested LVMPD file containing documents KM sought out and produced to LVMPD in the first place is wholly without merit. For KM to assert she was not on notice of Ronaldo's assertion of privilege over the entire body of Football Leaks documents is disingenuous at best and should not be well taken by this Court.

## B. THE DISTRICT COURT PROPERLY CONCLUDED RONALDO WAS NOT JUDICIALLY ESTOPPED FROM SEEKING DISMISSAL AND/OR DISQUALIFICATION.

KM contends the district erred when it found Ronaldo was not judicially estopped from seeking case terminating sanctions and/or disqualification based on KM and Stovall's misuse of the stolen and privileged Football Leaks documents. Opening Brief at pp. 26 and 50. In reviewing a district court's decision as to the application of judicial estoppel, this Court applies an abuse of discretion standard. *United States v. Ruiz*, 73 F.3d 949, 953 (9th Cir. 1996)(citing *United States v. Garcia*, 37 F.3d 1359, 1367 (9th Cir. 1994)).

### 1. Ronaldo Has Consistently Maintained the Football Leaks documents are Stolen and Stovall Should Never have Obtained the Materials in the First Place – Because this Position has Stayed Constant, Judicial Estoppel Cannot Apply.

KM contends because Ronaldo recognized disqualification of counsel may have been one available sanction at the time he sought to have the Football Leaks documents stricken, that he was judicially estopped from seeking dismissal [an entirely different sanction] or disqualification. Opening Brief at p. 50. (citing in relevant part *Hendrick & Lewis, PLLC v. Clinton*, 766 F.3d 991, 1001 (9th Cir. 2014). Tellingly, before the district court and now, KM fails to even mention the factors to be considered when assessing whether judicial estoppel should be applied. Presumably because such a showing could never be met under the facts of this case.

In *Clinton*(upon which KM relies), the court recognized that for judicial estoppel to apply, a party's later position must be totally inconsistent with its earlier position; the party must have been successful in asserting the first position (i.e., the tribunal adopted or accepted the first position as true such that acceptance of the later position would create the appearance that one of the tribunals had been misled); and whether the party asserting the inconsistent position would derive an unfair advantage. *Clinton*, 766 F.3d at 1001.

First, it is difficult to fathom how recognizing the sanction of disqualification is available to remedy misconduct and then later seeking that sanction or a more severe sanction when the misconduct continues, is anything ***but consistent***. Equally as significant, prior to the magistrate's Report and Recommendations finding dismissal to be the appropriate remedy, the district court had never ruled on whether disqualification or dismissal would be an available remedy because neither were sought. Said another way, the district court had never before accepted or rejected ***any*** position regarding case terminating sanctions or disqualification. Accordingly, the district court's decision to affirm the recommendation for dismissal could never have given rise to the appearance that the tribunal had been misled. In short, there is no legal or factual basis upon which to find Ronaldo should be judicially estopped from seeking case terminating sanctions or disqualification.

### C. THE DISTRICT COURT CORRECTLY DENIED KM'S UNTIMELY AND MISPLACED MOTION FOR IN CAMERA REVIEW.

KM argues the district court erred in affirming the magistrate's order, finding that KM had failed to make a threshold showing under the *Zolin* analysis thereby denying her motion for *in camera* review. Opening Brief at pp. 54–59. Whether an evidentiary showing is sufficient to allow *in camera* review under *Zolin*, is a mixed question of law and fact, which this Court reviews de novo. *In re Grand Jury Investigation,* 974 F.2d 1068, 1071-72 (9th Cir. 1992)(citations omitted).

### 1. KM Failed to Demonstrate the Crime-Fraud Exception Should Apply Under the Facts of this Case.

First and foremost, KM continues to ignore entirely that Stovall intentionally sought out stolen and privileged attorney-client communications and work product, which KM and Stovall then reviewed, digested and used to prosecute her claims all while opting for fourteen months to not even disclose the Football Leaks documents to Ronaldo or his counsel. Nevertheless, if KM wanted the court to conduct an *in camera* review of the documents to determine whether the crime-fraud exception might apply to eviscerate the privilege, the time for that was BEFORE KM and Stovall ever even obtained the privileged and confidential material. KM is not entitled to the benefit of a *Zolin* analysis because Stovall's misconduct rendered the process moot years ago.

*Zolin* is to be applied in order to assess whether a party should be entitled to access what would otherwise be confidential and privileged materials but for the crime-fraud exception. *Zolin*, 491 U.S. 554, 572 (1989)(citing *Caldwell v. Dist. Court*, 644 P.2d 26, 33 (Colo. 1982)). Because KM unilaterally decided she was entitled to access such privileged documents, the *Zolin* process was effectively nullified. Nevertheless, the district court entertained KM's years late request and still found KM fell sharply short of demonstrating the crime-fraud exception could apply to eviscerate the attorney-client communication and work product privileges. 1-ER-0026–0027.

  i.  <u>KM Failed to Offer Any Evidence Sufficient to Warrant *In Camera* Review, Much Less Non-Privileged Evidence.</u>

KM argues the district court applied too high of an evidentiary burden in determining whether *in camera* review was warranted under *Zolin*. As a preliminary matter, KM grossly mischaracterizes both the magistrate's ruling and the district court's order as to the crime-fraud exception. It appears KM would have this Court believe the magistrate and district court announced it would first require KM to present "concrete evidence" that Ronaldo raped KM as a "prerequisite to the court performing the 'step one' analysis of *Zolin*," before it would assess whether to conduct an *in camera* examination of the Football Leaks documents and determine whether the crime-fraud exception to privilege may apply. Opening Brief

at pp.11-12 and 55. However, the district court expressly considered and in no uncertain terms, outright rejected this exact argument:

> [KM] argues it was error to require proof of a predicate crime at the first step of the crime-fraud exception analysis. But *the magistrate judge did not rely on that finding* to determine whether the crime-fraud exception applied. He went on to explain that, even if he assumed Ronaldo committed a crime, *[KM's] non-privileged evidence did not meet the threshold to show a reasonable belief that Ronaldo and his lawyers committed further crimes* when handling the settlement negotiations. So to the extent that the magistrate judge's analysis of the defendant's unproven predicate crime was error, it was *harmless.*

1-ER-0025:9-15 (emphasis added)(internal citations omitted). At best, KM fundamentally misunderstands the basis for the magistrate's ruling and the district court's subsequent clarification; at worst, the mischaracterization is simply disingenuous. Either is problematic and the issue as a whole, only serves to underscore the litigation tactics that ultimately lead to such significant sanctions.

A party asserting the crime-fraud exception must show: 1) the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel in order to further that scheme; and 2) the attorney-client communications at issue are sufficiently related to and were made in furtherance of the intended or present continuing illegality. *In re Napster Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007)(*abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009)). Particularly relevant here, the Ninth Circuit has consistently recognized: "[t]he fact that a party has taken steps to structure a business transaction to limit its liability does not suffice, without more,

to establish that the crime-fraud exception applies. *Id.* at 1098 (citing *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 643-44 (8th Cir. 2001)).

Before a court engages in an *in camera review* of privileged documents to assess whether the crime-fraud exception applies, there must first be a factual basis adequate to support a reasonable person's good faith belief that such inspection will reveal evidence to establish the exception should be applied. *Zolin*, 491 U.S. 554, 572 (1989)(citing *Caldwell v. Dist. Court*, 644 P.2d 26, 33 (Colo. 1982)). In determining whether a threshold showing has been made such that *in camera* review is warranted, the court is not to consider materials that have been determined to be privileged. *Id.* at 573; *see also United States v. Chen*, 99 F.3d 1495, 1503 (1996) (recognizing the party seeking application of the crime-fraud exception, "cannot show the otherwise privileged material to the judge unless and until the judge has made this preliminary judgment.")(citing *Zolin*, 491 U.S. at 572)).

Contrary to KM's assertion that too heavy an evidentiary burden was imposed, the magistrate acknowledged "the first step of *Zolin* is not stringent," but "a party must at least make a minimal showing that the crime-fraud exception **could** apply." 2-ER-0072:15-17 (citing *United States v. Christensen*, 801 F.3d 970, 1005 (9th Cir. 2015)(*superseded on other grounds*)(828 F.3d 763 (9th Cir. 2015)(emphasis added). The magistrate went on to carefully consider KM's so-called evidence, including relevant portions of LVMPD's investigative file. 2-ER-

0072–76. The magistrate ultimately concluded, and the district court affirmed that, "Even if Mayorga had asserted a crime applicable to Ronaldo and his attorneys, her evidence – excluding privileged information – is insufficient to meet the threshold analysis." 2-ER-0073 and 1-ER-0026–27.

ii. The District Court Did Not Clearly Err in Finding KM Failed to Meet Prong One of *Zolin*.

Before the district court, KM focused her arguments on several categories of evidence upon which she asserted the magistrate should have found sufficient evidence the crime-fraud exception may apply. Having considered eight separate categories of evidence, the district court affirmed the magistrate's reasoned determination that there was "no evidence that Ronaldo or his attorneys intimidated [KM] or impeded law enforcement." 1-ER-0026:02-18. On appeal, KM returns her focus solely to the SCA, asking this Court to reverse the district court's factual determination that she did not meet the first prong of the *Zolin* analysis and thus, *in camera* review is not warranted. More specifically, KM asserts the SCA and related side agreement go beyond the "legitimate boundaries of the settlement of KM's damages claim." Opening Brief at p. 57.

KM fails to acknowledge that the district court's factual findings are reviewed only for clear error. To find such error, this Court would have to entirely ignore the magistrate first evaluated eight different categories of "evidence" proffered by KM, including the SCA, pursuant to which KM was paid hundreds of thousands of

dollars more than a decade ago.  After evaluating this evidence, the magistrate found that even if he assumed Ronaldo had committed a crime, KM's non-privileged evidence did not meet the threshold to show a reasonable belief that Ronaldo and his lawyers committed further crimes when handling the settlement negotiations. *Id*. at 1-ER-0025:12-14.  Specifically, the SCA and related agreements contained numerous clauses allowing KM to speak with law enforcement or engage in judicial proceedings to the extent required by law.  2-ER-0071–0076. Moreover, LVMPD's warrant and the Clark County District Attorney's press release did nothing to substantiate KM's claims because both merely showed that KM had already dropped her criminal charges against Ronaldo before she pursued the civil action and began communicating with his lawyer, which raised "the inference that [KM] chose not to pursue criminal prosecution independent of the settlement negotiations." *Id.*; *see also* 1-ER-0026:17-27:5.

In sum, both the magistrate and the district court carefully considered the facts and evidence presented on both sides, having reviewed both the privileged AND non-privileged materials.  Yet the court still found that KM failed to make the threshold showing required under *Zolin* to warrant *in camera* review to determine application of the crime-fraud exception.  Those well-reasoned factual findings are supported by documents and evidence KM herself proffered but which ultimately undermined her own claims.  KM has presented no new or non-privileged material upon which this Court may reasonably rely to determine the district court's order

denying *in camera* review was based on clearly erroneous factual findings. As such, the decision should be affirmed.

### 2. KM's Claim She Complied with the District Court's Orders is Belied by The Record in this Case.

The overarching theme of KM's arguments appears to be that she attempted to comply with the court's orders and somehow genuinely believed the undisputedly privileged and stricken Football Leaks documents could still be used to support her claims so long as she did not attach them to public filings. Even ignoring that KM was at all times represented by a long time Nevada lawyer, this argument is simply belied by both common sense and the plain language admonitions of several district court orders. Although KM and Stovall seek to find fault with Ronaldo for not having sought dismissal sooner, reality is had he sought case terminating sanctions at the outset, he would have been met with cries that such severe sanctions were premature. Indeed, it was KM's repeated use of the Football Leaks documents despite being cautioned against such abuses that in large part lead the district court to conclude it had no other meaningful option.

With respect to KM's so-called compliance with the court's prior orders and admonitions regarding the Football Leaks documents, Ronaldo's underlying motion for case terminating sanctions sets-forth in painstaking detail the manner in which KM ignored such directives. *See* 6-ER-0855–0859 and 6-ER-0911–0918. KM and Stovall continued to use not just the Football Leaks documents, but the

information they clearly reviewed, digested and retained for more than a year before disclosing the privileged materials in this case. *Id.* Moreover, both the district court's order imposing case terminating sanctions and the magistrate's report and recommendation further summarize the prejudicial manner Stovall has continued to wield the Football Leaks documents even since first facing the underlying motion for case terminating sanctions:

> …Stovall also has a propensity to use the documents whenever possible, treating them as if they were authenticated evidence. Even after the Court struck the Football Leaks documents record, Stovall has continued to use their contents to paper the docket with expensive and frivolous motions. For example, Stovall quotes the Football Leaks documents to argue that the settlement agreement was illegal, an issue not in front of this Court. Stovall also uses the Football Leaks documents – in direct violation of *Zolin* and Ninth Circuit precedent – to support his unfounded demand for *in camera* review. The existing and ongoing prejudice these documents create to Ronaldo's ability to defend this action weigh heavily in favor of dismissal.

2-ER-0081–0082; *see generally* 1-ER-0003–00046.

Undeterred, KM and Stovall continue to use the Football Leaks documents to forward frivolous legal theories and motions, despite that in granting case terminating sanctions, the district court expressly cautioned the pair against such misplaced and continued reliance. 1-EAR-0038:19-0039:8. KM brazenly asks this Court to accept that because Stovall at long last conceded he would not use the Football Leaks documents as exhibits during deposition questioning, that the prejudice to Ronaldo had somehow been cured. Opening Brief at pp. 48-49.

Nonsense. As the district court properly and succinctly concluded more than once, sanctions less than dismissal will not suffice:

> …because Stovall and Mayorga have read, reviewed and thoroughly analyzed the Football Leaks documents, their knowledge of the documents' contents cannot be undone. There is no possible way for this case to proceed where the Court cannot tell what arguments and testimony are based on these privileged documents.

2- ER-0082:20-24; and *see generally* 1-EAR-0041-43.

## VI.   <u>CONCLUSION</u>

In light of the foregoing facts, law and analysis, Ronaldo respectfully requests that this Court affirm entirely, the district court's order granting Ronaldo's Motion for Case Terminating Sanctions, Order of Dismissal of KM's Complaint and Order Denying KM's Motion for *In Camera* Review.

DATED this 20th day of April, 2023.

CHRISTIANSEN TRIAL LAWYERS

By_____
PETER S. CHRISTIANSEN, ESQ.
KENDELEE L. WORKS, ESQ.
*Attorneys for Appellee Cristiano Ronaldo*

## STATEMENT OF RELATED CASES

NO. 23-15359
D.C. NO.: 2:19-CV-00168-JAD-DJA
Short Title: Kathryn Mayorga v. Cristiano Ronaldo

The above-mentioned case in an appeal from the district court's Order granting fees and costs to Ronaldo.

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitations of Fed. R. App. P., Ninth Circuit Rule 32-1(a) because this brief contains 13,850 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac Version 16.72 with 14-point font size in Times New Roman type style.

DATED this 20th day of April, 2023.

CHRISTIANSEN TRIAL LAWYERS

By_____
PETER S. CHRISTIANSEN, ESQ.
KENDELEE L. WORKS, ESQ.
*Attorneys for Appellee Cristiano Ronaldo*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 20th day of April, 2023, I electronically filed the foregoing **APPELLEE CRISTIANO RONALDO'S ANSWERING BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF, which will send a notice of electronic filing to the following:

Leslie Mark Stovall, Esq.
Stovall & Associates
2301 Palomino Lane
Las Vegas, NV 89107

_____
An Employee of Christiansen Trial Lawyers